W. J. CURTIS, Appellant, v. EMIL MICHAELSON et al., Appellees.

112

April 3, 1928.

Rehearing Denied June 26, 1928.

*Parrish, Cohen, Guthrie, Walters & Halloran,* for appellant.

*Walter L. Stewart* and *Ben J. Gibson,* for Automobile Underwriters, Incorporated, appellee.

De Graff, J.—One question is presented for decision on this appeal: Does the statutory provision embodied in Section

5105-a26, Code of 1927, give to a party injured by a motor carrier a right to proceed directly against the obligor on the bond given in compliance with the statute? Before answering this question, the pleaded facts should be stated.

The record discloses that appellant filed his petition in the district court of Iowa in and for Polk County on February 23, 1927, naming Emil Michaelson as defendant, and claiming from him damages on account of injuries and damages sustained through the negligence of the defendant Michaelson as a licensed operator of an automobile bus line between Mitchellville, Iowa, and Des Moines. Appellant filed an amendment to his petition, alleging that the defendant Michaelson had disposed of his property, in whole or in part, and had absconded, so that ordinary service of process could not be served upon him, and that said defendant Michaelson was a licensed motor bus operator, and had filed with the board of railroad commissioners of the state of Iowa, in accordance with law, a liability insurance bond issued by the State Automobile Insurance Association in the penal sum of $5,000 for injury to one person, which liability insurance bond bound the State Automobile Insurance Association to make compensation for injuries to persons resulting from the operation of such motor bus described therein. This amendment named the State Automobile Insurance Association as a defendant in said action, and claimed $5,000 by reason of the liability insurance policy issued by it.

On May 26, 1927, a second amendment was filed to plaintiff's petition, wherein he dismissed his action against the State Automobile Insurance Association, and in place thereof named the Automobile Underwriters, Incorporated, attorney in fact for the State Automobile Insurance Association, as a defendant, and claimed the sum of $5,000 by reason of the liability insurance bond issued by the said Automobile Underwriters, Incorporated, attorney in fact for the State Automobile Insurance Association. The record sets out the liability insurance bond and the indorsements thereon and thereto which were filed with the board of railroad commissioners by the said defendant Michaelson and issued by the said Automobile Underwriters, Incorporated, attorney in fact for the so-called "State Automobile Insurance Association."

The liability insurance bond filed by Michaelson with the board of railroad commissioners discloses that the Automobile Underwriters, Incorporated, acted as attorney in fact for several individual insurers or so-called "subscribers," at *a place* designated the "State Automobile Insurance Association." The identities of these subscribers are not disclosed by the record, but they have acted through an attorney in fact, or agent, as is shown by the filed liability insurance bond, which reads, in part, as follows:

> "Subscribers at
> "The
> "State Automobile Insurance
> "Association
> "Des Moines, Iowa,
> " (hereinafter called the Association)

> "In consideration of the exchange of indemnities—do hereby severally agree with the subscriber named herein to indemnify such subscriber—against loss from the liability imposed by law—upon (him) or account of bodily injuries—(etc.) —suffered by any person or persons as the result of an accident—due to the ownership, maintenance or use of any automobile described—."

It may be observed that the place of business designated by the name "State Automobile Insurance Association" is not an entity. A reciprocal or inter-insurance exchange comprises and designates the place or office where self-serving private contracts of insurance are exchanged by and between individuals, firms, associations, and corporations who become "subscribers" thereat for the purpose of exchanging such insurance among and between one another and each other only, through the medium of a common "attorney in fact,"—usually a corporation, as in this case,—which is appointed by a written power of attorney, and which maintains the "exchange." Sections 9083, 9084, 9085, and 9094, Code of 1927. The term "subscribers at" is technically and legally correct, and is not, in a legal sense, synonymous with or equivalent to "subscribers to" or "subscribers of," and the latter terms may not legally

or accurately be substituted therefor, or employed as relating to subscribers. It (the State Automobile Insurance Association) had no capital stock; it issued no policy of insurance or contract of indemnity, collected no premiums, and had no income. As said in *Alyea-Nichols Co. v. United States* (D. C., S. D. Ill.), 12 Fed. (2d Series) 998, which case involved a reciprocal or inter-insurance exchange, established in accordance with the laws of the state of Illinois:

"It [Belt Automobile Indemnity Association] was and is neither a natural nor an artificial person."

It is further said:

"It seems to the court that the exchange, attorney in fact, and the individual subscribers, considered jointly, would more clearly come within the description of 'association' than that of any other entity mentioned in the statute upon which the taxes sought to be recovered could be levied * * *. The attorney in fact is the limited agent of the subscriber, acting for him in the exchange of contracts, and holding the deposit made by the subscriber in readiness to meet the subscriber's obligation. The making of the deposit does not change the character or legal effect of the relations between the subscribers, nor the relation which exists between the individual subscriber and his individual agent, the attorney in fact."

See, also, *Pickering v. Alyea-Nichols Co.* (C. C. A. 7th Cir.), 21 Fed. (2d Series) 501.

The policy issued in the instant case recited:

"In the event a suit or other proceeding in law or in equity shall be begun or maintained for recovery of any claims, upon, under, or by virtue of this contract, such suit or proceeding shall be brought only against the Automobile Underwriters of Des Moines, Iowa, attorney in fact for the subscribers at the State Automobile Insurance Association of Des Moines, Iowa."

Our statute governing reciprocal or inter-insurance contracts provides:

"Such subscribers so contracting among themselves, shall, through their attorney, file with the commissioner of insurance a declaration verified by the oath of such attorney, or, where

such attorney is a corporation, by the oath of the duly authorized officers thereof, setting forth'' the name of the attorney, the name or designation under which such contracts are issued, the location of the principal office, the kind or kinds of insurance to be effected, a copy of each form of policy, contract, or agreement under or by which the insurance is to be effected, a copy of the form of power of attorney under which such insurance is to be effected, the instrument authorizing service of process, etc. Section 9086, Code of 1924. See Chapter 180, Acts of the Thirty-seventh General Assembly, as amended.

We must assume that the attorney in fact is, like every other attorney in fact, an agent, with those powers that are stipulated in the undertaking. See *John L. Walker Co. v. National Underwriters' Co.* (C. C. A. 7th Cir.), 3 Fed. (2d Series) 102.

In the case at bar, it is obvious that the real insurers or obligors are the unnamed subscribers at a place designated, and that the intent of the bond was the exchange of indemnity, and to indemnify only Michaelson, the subscriber named in the bond, for his loss, and not for the loss sustained by other persons. It is also obvious that this liability insurance bond or policy was, on its face, not the kind of a liability insurance bond contemplated by the statute, inasmuch as it did not bind the insurers thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of the motor carrier.

In order to correct this inconsistency, and to make the bond comply with the provisions of the statute, presently noted, an indorsement was attached, which reads as follows:

''G. It is further understood and agreed that it is the intent of this endorsement to amend the policy so as to fully comply with and give all the coverage required by Chapter 5, Laws of the Forty-first General Assembly of Iowa, and the rules and regulations of the Iowa board of railroad commissioners governing the operation of motor carriers.''

This indorsement was executed by the Automobile Underwriters, Incorporated, attorney in fact. The said liability bond is not attempted to be impeached, and it is not questioned that the Automobile Underwriters, Incorporated, held itself

out as being legally authorized to bind the undisclosed principals (subscribers at the State Automobile Insurance Association) as surety under the liability insurance bond issued by the Automobile Underwriters, Incorporated, as attorney in fact. Said bond was filed by the defendant Michaelson, in compliance with the statute, with the board of railroad commissioners, and it was upon the filing of this bond that the said board issued a license to Michaelson to operate motor busses. The defendant surety has placed itself in such a position that it must now respond to the obligation which has been assumed. The obligation must be viewed as a statutory bond. Before a license could be issued to Michaelson by the board of railroad commissioners to operate motor vehicles for the purpose of carrying passengers and freight as a common carrier, Michaelson was compelled to file with such board a liability insurance bond in form to be approved by such board, and to be issued by some company authorized to do business in this state, in such penal sum as the board may deem necessary to protect the interests of the public, with due regard to the number of persons and amount of property involved, "which liability insurance bond shall bind the obligors thereunder to make compensation for injuries to persons and loss of, or damage to, property resulting from the operation of such motor carrier." Section 5105-a26, Code of 1927.

It will be observed that the obligation is to make compensation for injuries to persons and damage to property resulting from the operation of such motor carriers. It was an obligation that had to be assumed by some company authorized to do business in this state, and clearly there must be no evasion, equivocation, or reservation whatsoever connected therewith. Such obligation could not be abridged or modified in any form of bond that the board of railroad commissioners might approve. The obligation was not upon the motor bus operator, but was directly upon the company issuing such liability insurance policy; since the statute reads that the obligors—or, in other words, the sureties under such bond—shall be bound to make (which means to pay) compensation for such injuries and damages. There can be no question whatever as to the intent of the legislature in requiring a liability insurance bond to be filed by each applicant for a license to operate motor busses,

and that such bond must be issued by a company authorized to do an insurance or surety business in this state. The legislative intent is to provide security for persons who might suffer personal injuries or damage to their property by reason of the operation of such motor busses. The statute contemplates that the greatest security possible is to be afforded the public in the claim for injuries to persons and property. The bond in this case was so filed.

In construing a statute, it is proper to take into consideration the mischief sought to be remedied. *Elks v. Conn,* 186 Iowa 48; *Newgirg v. Black,* 174 Iowa 636; *Cosson v. Bradshaw,* 160 Iowa 296. It cannot be seriously contended that the legislature ever intended that the bond which it required such driver to furnish could be nullified by the act of the driver himself in absenting himself "without leave" from the jurisdiction of the Iowa court. One of the purposes for which the instant bond was required was to give an injured person, a member of the public, some protection and redress when injured by an irresponsible bus driver. It may also be noted that a statute intended for public benefit is to be taken most strongly against those who claim rights or powers under it, and most favorably to the public. *Hawkeye Portland Cement Co. v. Chicago, R. I. & P. R. Co.,* 198 Iowa 1250. This is a rule of sound public policy, which finds application in the instant case, since we have before us a statute designed to benefit the public—to protect and safeguard its interest.

It is well settled that the liability of a surety under a statutory bond is measured and defined by the statute requiring the bond. Additions to the bond will be treated as surplusage, and omitted provisions will be read into it. *Philip Carey Co. v. Maryland Cas. Co.,* 201 Iowa 1063; *Trainer v. Kossuth County,* 199 Iowa 55; *Zapf v. Ridenour,* 198 Iowa 1006; *Joint Board v. Title Guar. & Sur. Co.,* 198 Iowa 1382; *Schisel v. Marvill,* 198 Iowa 725; *Nebraska Culvert & Mfg. Co. v. Freeman,* 197 Iowa 720; *United States Fid. & Guar. Co. v. Iowa Tel. Co.,* 174 Iowa 476. The railroad commission, although it was directed by statute to approve the form of the bond, had no power to authorize a departure from the requirements of the statute.

The demurrer of the defendant surety in the instant case

is predicated on the assumption that Indorsement E on the bond absolutely required a judgment as against Michaelson, and a return *nulla bona*, as a condition precedent to recover; since the language of the demurrer recites that the policy "shows that the action upon said policy against this defendant [surety] only accrues in the event 'on a final judgment against the assured in an action covered by this policy, being returned unsatisfied, the judgment creditors have a right of action' * * *." Indorsement E reads as follows:

"E. It is further understood and agreed that should an execution on a final judgment against the assured in an action covered by this policy be returned unsatisfied, the judgment creditor shall have a right of action against the association to the same extent that the assured would have, had such assured paid such final judgment."

Provision E is not exclusive in character. It contains nothing that denies other remedies to an injured person, if he is otherwise entitled to them. Provision E simply meets a situation which would arise, "should an execution * * * be returned unsatisfied." It is a provision covering an alternative procedure. There is no provision in the bond which expressly excludes a direct right of action by the injured person against the surety on the bond. The bond was a contract, made not only for the protection of the operator of the motor bus, but also directly for the benefit of an injured person. The statutory requirement must be read into this bond. As said in *Milliron v. Dittman*, 180 Cal. 443 (181 Pac. 779):

"To read the statutory requirement into the bond, while it [statute] accords to the plaintiff the privilege of joining the casualty company in a suit against the operator of the bus, introduces no necessary inconsistency into the contract, and leaves the substantial rights of the parties unimpaired."

Furthermore, Section 5105-a26, Code of 1927, must be construed in connection with Section 10982, which reads:

"When a bond or other instrument given to the state or county or other municipal or school corporation, or to any officer or person, is intended for the security of the public generally, or of particular individuals, action may be brought

120

thereon in the name of any person intended to be thus secured, who has sustained an injury in consequence of a breach thereof, except when otherwise provided."

These statutory provisions are *in pari materia*, and must be construed together in ascertaining the legislative intent. Section 10982 has been the law of this state since the Code of 1851, and it will be presumed that the legislature had in mind Section 10982 when Section 5105-a26 was enacted by the forty-first general assembly. The right of action given by Section 10982 has always been construed to be a direct and unqualified one. *Zapf v. Ridenour*, supra; *Wagner v. Kelso*, 195 Iowa 959; *Haakinson & Beaty Co. v. McPherson*, 182 Iowa 476; *Streator Clay Mfg. Co. v. Henning-Vineyard Co.*, 176 Iowa 297; *Hay v. Hassett*, 174 Iowa 601.

Defendant Automobile Underwriters, Incorporated, as the attorney in fact or agent of undisclosed subscribers, was rightfully named as a defendant in this action. The trial court erred in sustaining the demurrer, and the judgment entered is—*Reversed.*

ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.

STEVENS, C. J., dissents.