189 So. 58

### EMPLOYERS INS. CO. OF ALABAMA v. JOHNSTON.

#### 6 Div. 442.

Supreme Court of Alabama.

May 18, 1939.

Chas. W. Greer, of Birmingham, for appellee.

Smith, Windham, Jackson & Rives, of Birmingham, for appellant.

FOSTER, Justice.

The bill by appellee seeks to make available the remedy provided by section 8377, Code, whereby a plaintiff, with judgment for bodily injury or death against one insured against such loss, is entitled to have the insurance money so provided for applied to the satisfaction of the judgment. This is a supplement to section 8376, Code,

whose terms are not here particularly important.

On September 22, 1936, complainant obtained a judgment for bodily injuries and property damage against Webb and Rogers for $2500, besides costs, sustained as the result of a collision of the automobile in which she was riding with an automobile truck and trailer which defendant Rogers had been granted a permit to operate as a contract motor carrier by the Alabama Public Service Commission, and which was being operated by defendant Webb for Rogers under said permit, issued under authority of the Act of October 28, 1932, section 26. See Acts 1932, Ex.Sess., page 185. This Act is generally referred to as the Contract Motor Carrier Act, distinguishable from the Common Carrier Act, so called, of June 19, 1931. Acts 1931, page 303.

There had been issued by appellant a policy of automobile liability and property damage insurance, which was filed by Rogers with the probate judge of Mobile County in conformance with the Act of October 28, 1932, supra, containing an omnibus clause effective as to the driver Webb.

The Public Service Commission had issued in accordance with said Act an order touching the terms, conditions and provisions of bonds and insurance policies provided for by it, in which it was ordered as to bonds: "Indemnity bonds, to be acceptable, must provide (a) that the motor carrier, in respect to all vehicles lawfully operated under his (her) (its) permit, is duly indemnified as provided by the statute against all damages or injury, to the extent indicated in paragraph 1 hereof, suffered by any person from the operations of such vehicles, other than damage to, or injury of, the insured or his employees, or passengers of, or the shippers of freight by, such carrier; (b) that no condition, provision, stipulation or limitation contained in any such indemnity bond, nor the violation of the same by the motor carrier, shall affect in any way the right of any person injured in person or property to recover the damages recoverable under such bond, and (c) that such bond may not be cancelled without written notice to the Alabama Public Service Commission at least fifteen days prior thereto," and as to insurance policies, as follows:

"All public-liability insurance policies shall contain the following endorsement (A.P.S.C.): ·
"1932 Act
"P.L. & P.D.
"(Revised)
    "A.P.S.C. Endorsement No. 4.
"The policy to which this endorsement is attached is a public-liability and property-damage policy for the protection of the public in the collection of damages for which the motor carrier may be liable by reason of the operation of the motor vehicle or vehicles insured, and is written in pursuance of and is to be construed in accordance with an Act of the Legislature of Alabama approved October 28, 1932 (H. 113), and the reasonable and legal rules and regulations of the Alabama Public Service Commission adopted thereunder and applicable thereto. The policy is to be filed with the State in accordance with said statute."

The policy contained the usual cooperation clause in the following language: "Assured shall at all times, upon request, render any assistance or cooperation in his power in the investigation, settlement or defense of the · cause, and aid in securing the attendance of witnesses and in prosecuting appeals."

It also contained clause "J" as follows:. "Statutory provision. If any of the provisions or conditions of this policy shall conflict with or are inconsistent with the law of the state where this contract is entered into, then such provisions and conditions shall be inoperative in such state, and the state law shall prevail."

Also the following: "The terms and conditions of this policy shall remain in full force and effect and be binding between the company and the assured, and if the assured, or any other person covered by this policy, violates any of the terms or conditions of this policy and the company shall be obliged to pay and shall pay a loss hereunder which it would not have paid but for the requirements of such law and this paragraph, then the assured, or any other person, shall reimburse the company to the extent of such loss."

And: "It is understood and agreed that should the company be obliged to pay any loss under this policy which it would not have been obliged to pay but for the provisions of the 'Alabama Motor Carrier Act of 1932' and amendments thereto, or

similar laws of other states, then the assured shall, upon demand, reimburse the company to the extent of such loss."

Together with the following endorsement, in part:

"The policy to which this endorsement is attached is a Public Liability and Property Damage policy for the protection of the public in the collection of damages for which the motor carrier may be liable by reason of the operation of the motor vehicle or vehicles insured, and is written in pursuance of and is to be construed in accordance with an Act of the Legislature of Alabama approved October 28, 1932 (H. 113), and the reasonable and legal rules and regulations of the Alabama Public Service Commission adopted thereunder and applicable hereto. The policy is to be filed with the State in accordance with said statute. * * *

"Neither is it intended by this endorsement to require insurance to protect the passengers of, or the shippers of freight by, the motor carrier insured, but this shall not affect any stipulation that may be contained in the policy itself affording such protection."

It is agreed that facts occurred which, we think, mean that the defendants Rogers and Webb violated the cooperation clause, supra, whereupon this appellant, as such insurance carrier, withdrew from the defense of that case, and a judgment nil dicit was entered for plaintiff against Rogers and Webb.

In the agreed statement of facts it is stipulated that: "Only one question is thereby presented for decision, viz: Upon the failure on the part of the assured, operating under the Motor Carrier Act of 1932, to cooperate in the defense of a damage suit filed against him, as required by the terms of his policy under the circumstances above outlined, and upon the retirement from the litigation by his insurance carrier for that reason is the latter liable to the plaintiffs in these actions." No other question of law or fact will therefore be treated by us on this appeal.

We have held along with the generally accepted view that the right and remedy provided for in sections 8376 and 8377, Code (not influenced by other provisions of the law or contract), did not extend to plaintiff a primary claim as a contractee of such a policy of insurance with a power to sue to enforce it independent of the status created between the assured, against whom judgment had been rendered, and his insurance carrier. That plaintiff's status was derivative and depended upon the liability of the insurer to the assured under the contract, provided that after the accident and injury they cannot cancel or annul the contract, but the cooperation clause, supra, was not affected, and by its breach, not waived, the liability of the insurer to the assured and through him to the injured party was forfeited and lost. George v. Employers' Liability Ass'r Corp., 219 Ala. 307, 122 So. 175, 72 A.L.R. 1438; Metropolitan Casualty Ins. Co. v. Blue, 219 Ala. 37, 121 So. 25; see 72 A.L.R. 1448 et seq.

So that complainant cannot have the benefit of the relief provided for in those Code sections, unless there is something here presented which operates to relieve this case from the effect of that principle.

It is contended that since the policy is controlled by the Contract Carrier Act of 1932, its provisions serve to create a different legal status.

That Act provides (section 26) that no permit shall be issued under it until there has been filed and accepted by the judge of probate an insurance policy (not now considering a right in the alternative to file a bond) "for the protection of the public [not including passengers and shippers] in the collection of damages for which the carrier may be liable by reason of the operation of any motor vehicle subject to the provisions of this Act." And "It shall be the duty of the [Alabama Public Service] Commission to prescribe by general order the terms, conditions and provisions of such bonds", and "It shall be the duty of the Commission by general order to prescribe the form of such bond." (In printing section 26 there is an error at this point. There should be a period after "bonds," and a new sentence begins: "No bond or insurance policy executed in accordance [etc.] shall be cancelled [etc.].)" There seems to be no express provision authorizing the commission to prescribe the terms, conditions or form of an insurance policy. But we have shown that by an endorsement on the policy it is stipulated that it is written in pursuance and to be construed in accordance with that Act; and that it is filed in accordance with it. This follows in form the general order of the commis-

sion. So that it is effective by stipulation whether so by such order or not.

It is very evident therefore that the terms of the Act are as incorporated in the policy and are controlling over its other provisions when conflicting in legal effect. So that the exact question is whether by said Act, a member of the public, not a passenger or shipper, injured by reason of the negligence of such an assured, with a judgment fixing the amount of the liability, is subject to be defeated of his remedy under section 8377, Code, for the want of cooperation by the assured in the defense of the suit.

It is clear that the effect of such defense as declared in the George and Blue cases, supra, was the result of the holding that plaintiff's claim was derivative, and not primary. And the cases in other states which apply the principle to their motor carrier acts are also based upon the holding that the claim is derivative as defined by those acts. 76 A.L.R. 225 et seq.

In the case of Miller v. Metropolitan Casualty Co., 50 R.I. 166, 146 A. 412, 413 (see 76 A.L.R. 230, relied on by appellant), the statute provided that " 'Every policy * * * shall contain provisions to the effect that the insurer shall be directly liable to the injured party * * * to pay him the amount of damages for which such insured is liable. * * * Said injured party * * * after having obtained judgment against the insured alone, may proceed on said judgment in a separate action against said insurer.' " The court held that its aim was not to place him in a more advantageous position than that of the assured; that though there is created a privity of contract, it is subject to the contractual rights created by the policy, and does not make a new basis of indemnity.

And in Bachhuber v. Boosalis, 200 Wis. 574, 229 N.W. 117, 118 (see 76 A. L.R. 230), relied on by appellant, the statute provided that the policy shall be deemed to contain the following conditions: "That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, caused by the negligent operation" (etc.). It was held that this creates no liability where none exists under the policy and only provides direct liability and for joining the insurer with the assured in an action where there is an ultimate liability on the insurer on its con-tract of insurance; that the insurer is liable to the plaintiff only by reason of its liability to the assured, and, therefore, such a defense is available against the injured party the same as against the assured.

Those cases were construing statutes which they held do not create a primary liability, and that simply because the injured party had a remedy either before or after judgment against the assured, there is not thereby created a primary liability to him, not dependent upon the status of the relations between the assured and insurer.

The remedy provided by section 8377, Code, is dependent upon the legal effect of the contract rights of the injured party against the insurer. The written contract is controlled by the statute in fixing those rights. The remedy is none the less available if the rights of the injured party are primary and not derivative, if such be its meaning considered in the light of the statute. By the express terms of the Acts of 1932, 1931, and 1927, pages 309, 313, the policy of insurance shall be for the protection of the public.

We held in Fidelity & Casualty Co. v. Jacks, 231 Ala. 394, 165 So. 242, that this meant what it said in a true sense, though the assured had not complied with the contract in respect to the identity of the vehicle in service.

And in McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291, we held as to the Act of 1932 that both insurer and assured could be jointly sued, as had been held under the Act of 1927, and of 1931 in Hodges v. Wells, 226 Ala. 558, 147 So. 672, and likewise under the Act of 1932, here in question, in Auto Mutual Indemnity Co. v. Moore, 235 Ala. 426, 179 So. 368.

The Act of 1931 contains a provision not in that of 1932, not only protecting the injured party, which is in both acts, but also the following: "which shall bind said surety [insurer] to pay any judgment rendered against the motor transportation company, notwithstanding any provisions in such insurance policy to the contrary." Gen.Acts 1931, p. 312, § 13. So that in so far as that Act is concerned, there can be no question but that the defense now offered would not be available, by the express terms in which it is stated.

The argument is that the omission of those terms from the Act of 1932 serves

to create the status of the injured party as one of derivative standing. Much significance is laid to such omission in comparing the two acts in this respect.

Another difference is that the Act of 1931 expressly authorizes an action against the insurer by the injured party, but not so in the Act of 1932. But the Act of 1932 is made expressly for the protection of the public. We have a long line of cases holding that when a contract is made expressly for the benefit of another, not a party to it, he may sue on it. Fidelity & Deposit Co. v. Rainer, 220 Ala. 262, 125 So. 55, 77 A.L.R. 13. And so we held in the Moore case, supra, that a suit against the insurer by the injured party was available under the Act of 1932.

Whether the rights of the injured party are primary and not derivative is not controlled by the nature of his remedy. His remedy may be under the conditions of the contract or irrespective of them. If the purpose of the Act shows an intent to protect the public on account of such injury to the extent that it is not subject to stipulations applicable between the assured and insurer, it will be given that construction if its language is broad enough to sustain such a construction. The mere circumstance that it is so plainly expressed in one and not in the other need not be controlling. We do not think the public will be thus protected if the assured and insurer can stipulate so as to defeat such right by no fault of the injured party.

The contract itself fully recognizes the possibility of liability to the public when none exists to the assured, when the assured is due to reimburse the insurer. This is illustrated in the present litigation. The approval and acceptance of a policy in such form could be well supported on the theory that it creates a dual relation, one to the public and another and different one to the assured. The theory that the injured party has a legal claim though the assured may not have by reason of the breach of some condition subsequent has been approved in many cases with statutes of more or less similarity to ours. In this connection we have examined the following cases so holding: Ott v. American F. & C. Co., 161 S.C. 314, 159 S.E. 635, 76 A.L.R. 4 (the statute there in question was quite similar to our Act of 1932); Edwards v. F. & C. Co., 11 La.App. 176, 123 So. 162; Hipp v. Prudential Casualty & Surety Co., 60 S.D. 300, 244 N.W. 346 (observing that a statute intended for public benefit is to be taken most favorably to the public). That principle of construction is likewise mentioned in Curtis v. Michaelson, 206 Iowa 111, 219 N.W. 49 (holding that liability could not be defeated by the act of the driver in absenting himself from the jurisdiction of the court); Engelson v. Commerce Cas. Co., 149 Misc. 886, 269 N.Y.S. 453 (holding that a passenger has original right of action against insurer, and restrictions of liability in the policy contrary to the main purpose of the statute are not effective against him, and makes the distinction between such a case and one like our George and Blue cases, supra); Metropolitan Casualty Ins. Co. v. Albritton, 214 Ky. 16, 282 S.W. 187 (where the defense was on the cooperation clause, holding that dual obligations were created under a similar statute, one to the injured person and the other to the assured—76 A.L.R. 224); Hindel v. State Farm Mutual Auto Ins. Co., 7 Cir., 97 F.2d 777 (similar to the holding in our Jacks case, supra); Boyle v. Manufacturers' Liability Ins. Co., 96 N.J.L. 380, 115 A. 383 (holding that a jitney bus indemnity policy is for the benefit of the traveling public, not affected by rights subsisting between insured and insurer under statutes of New Jersey).

We think that our Act of 1932, supra, should be likewise so construed, and such is now our holding.

The decree of the circuit court, in equity, gave effect to such views, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.