The Honorable Randy Laverty State Senator P.O. Box 165 Jasper, AR 72641
Dear Senator Laverty:
You have requested my opinion concerning the applicability of the Arkansas Freedom of Information Act to certain meetings held recently by two "professional judgment panels" that were created pursuant to a contract entered into under the authority of Act 94 of 2003.
Act 94, which was enacted in response to the Arkansas Supreme Court's decision in Lake View School District No. 25 v. Huckabee, 01-836 (Ark. 11-21-2002), created the Joint Committee on Educational Adequacy and authorized the Committee to enter into contracts with consultants to perform an educational adequacy study for the State of Arkansas. The General Assembly appropriated the amount of $500,000.00 to fund the work of the Committee. Acts 2003, No. 251. Under the terms of the contract that was entered into with consultants pursuant to the Act, two "professional judgment panels" were created. The contract describes the panels as ". . . two, large (30 or so member) panels, each of which would be divided into two groups, to review the proposed Evidence-Based School Models. Membership should include teachers, principals, central office administrators and other key state education players — school board members, teacher association leaders, parents, business leaders, etc."
The contract describes the functions of the panels as follows:
 The purpose of these panels is to modify and verify the evidence based school design developed in phase one [of the contract] so that it would provide — in the professional judgment of those participating — an adequate assurance that most students in a school would meet the state's educational standards.
* * *
 Their charge would be to critique the proposed school models and recommend changes, deletions, and additions, justifying each with evidence of impact. The Committee and others designated by the Committee would select the members of the panel, places for the review meetings, and organize the meetings.
* * *
 Once the panels have completed their work, [the contractor] will prepare a report to the Committee summarizing the recommendations of the state review panels, and comparing the recommendations of the panels with the evidence based model established by the committee. Following review of these models, [the contractor] will work with the Committee to create a final set of prototype schools and school districts.
It is my understanding that appropriated state funds were used to pay the consultants, as well as the expenses of the Committee members and of the panel members, and to pay for the facilities utilized by the panels.
The professional judgment panels met on June 11 and 12, 2003, and their meetings were closed to the public.
The foregoing facts have given rise to the following question:
 Are the meetings of the professional judgment panels subject to the open meetings requirement of the Arkansas Freedom of Information Act (FOIA)?
RESPONSE
Preliminary Matters
As an initial matter, I would like to point out that the professional judgment panels were not required by law to meet in private; they had the discretion to open their meetings to the public. Additionally, in light of the public's vital interest in the subject matter, it is my opinion that good public policy would have dictated that the panels open their meetings to the public.
In this opinion, I am addressing the narrower question of whether the professional judgment panels were required by the FOIA to open their meetings to the public. This factual scenario requires me to analyze the issue of whether a purely advisory body that does not include members of the larger governing body to which it reports is subject to the open meetings requirement of the FOIA. In my opinion, neither the language of the FOIA nor the Arkansas Supreme Court's interpretation of the FOIA provides a definitive answer to this question. In the discussion that follows, I analyze the issue by reviewing the applicable statutory language, the opinions of previous Attorneys General, the decisions of the courts of other jurisdictions, and the Arkansas Supreme Court's most analogous cases. I conclude herein that the meetings of the professional judgment panels were not required by law to be held in public, because the panels did not constitute "governing bodies." I urge the General Assembly or the Arkansas Supreme Court further to clarify precisely who is subject to the open meetings requirement.
Discussion
I will begin by quoting the pertinent provisions of the FOIA.
First, the open meetings requirement of the FOIA states:
 (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
A.C.A. § 25-19-106(a).
Second, the term "public meetings," as used in the FOIA, is defined as follows:
 (4) "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds[.]
A.C.A. § 25-19-103(4).
My predecessors in the Attorney General's office have consistently taken the position that the open meetings requirement of the FOIA applies only to "governing bodies" — bodies that have ultimate decision-making authority. See, e.g., Ops. Att'y Gen. Nos. 2002-092; 2000-260; 2000-251; 99-407; 98-169; 98-113; 97-080; 92-241; 91-288. My predecessors have also taken the correlative view that the open meetings requirement does not apply to advisory bodies that are not made up of members of the governing body, unless the advisory body is a "de facto governing body," i.e., a body whose recommendations are simply "rubber stamped" by the governing body. Id.
This view has been based primarily on the use of the term "governing bodies" in the provision of the FOIA stating the open meetings requirement quoted above. This interpretation provides a definitive test, grounded in the specific language of the FOIA, for determining who is subject to the open meetings requirement. Because no other source of law provides clearer guidance on this issue, I will maintain reliance on the reference to "governing bodies" in the FOIA and will continue to interpret it as an indication that the open meetings requirement applies only to "governing bodies" (or de facto governing bodies) and not to advisory bodies.
Nevertheless, I note the following issues:
 (1) The reference in the FOIA to "governing bodies" is not entirely clear and could be interpreted either as a limitation on the applicability of the open meetings requirement, or simply as a descriptive phrase.
 (2) The Arkansas case law is also not clear on this point. The Arkansas Supreme Court has never explicitly adopted the "governing bodies" (or the de facto governing bodies) interpretation, and although the court's decisions could be interpreted to have been implicitly based on the "governing bodies" interpretation, they simply do not address whether the court might take the view that some advisory bodies should be subject to the open meetings requirement.
 (3) The "governing bodies" interpretation is in some tension with the FOIA's stated purpose and to the court's policy of a liberal interpretation in favor of openness.
The Reference to "Governing Bodies"
As stated above, the use of the term "governing bodies" in A.C.A. §25-19-106(a) is not entirely clear. Again, that provision states:
 (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
A.C.A. § 25-19-106(a).
On one hand, the phrase "governing bodies" in this provision has previously been consistently interpreted by this office as defining which entities must conduct open meetings, i.e., only governing bodies must comply with the open meetings requirement. On the other hand it is possible to read that phrase as merely explanatory and not definitional,i.e., as the only means of logically speaking of the meetings of certain entities. For example, the structure of the above-quoted sentence could give rise to an argument that the term "governing bodies" applies only to "municipalities, counties, townships, and school districts," because such entities can only meet through their governing bodies, and the term therefore was necessary in order to speak sensibly about the meetings of such entities. Moreover, it might be argued that the term "governing bodies" may not have been intended to apply to "boards, bureaus, commissions, or organizations of the State of Arkansas," because such entities may not all have "governing bodies," as such. Yet, this reading of the sentence could lead to the anomalous result that the open meetings requirement would apply to advisory bodies on the state level, but only to "governing bodies" on the local level. The import of the reference to "governing bodies" is thus unclear.
The Arkansas Case Law
The Arkansas Supreme Court has never interpreted the term "governing bodies" as used in the FOIA's open meetings requirement. The court has, however, addressed the applicability of the FOIA's open meetings requirement to various situations involving subcommittees and bodies other than a governing body per se. Although these decisions do provide some insight as to the court's view of some aspects of the issue, they do not provide decisive guidance as to the precise meaning of the phrase "governing bodies" for purposes of determining the applicability of the FOIA.
For example, in Ark. Gazette Co. v. Pickens, 258 Ark. 69, 522 S.W.2d 350
(1975), the court held that the meetings of a subcommittee of the Board of Trustees of the University of Arkansas were subject to the open meetings requirement. The subcommittee was made up wholly of members of the Board of Trustees. The court rejected the argument that the absence of the word "committee" in the applicable statute wholly excused such committees from compliance with the law. The court stated that "[w]hen the General Assembly used the expression `to learn and report fully the activities of their public officials,' it meant not only the action taken on particular matters, but likewise the reason for taking that action[.]"Id. at 74-75. The court reasoned that if the law were otherwise, boards that are clearly subject to the open meetings requirement could evade the law by setting up elaborate committee systems through which decisions could be reached. The court therefore held that when "a committee of a board meets for the transaction of business this is a public meeting, and subject to the Freedom of Information Act." Id. at 76-77. Because the subcommittee that was at issue in Pickens was made up wholly of members of the Board of Trustees, it is unclear whether the holding should extend to subcommittees that are not merely subgroups of the body with decision-making authority.
In El Dorado Mayor v. El Dorado Broadcasting Co., 260 Ark. 821, 824,544 S.W.2d 206 (1976), the court addressed a situation in which four of eight city council members met with the mayor and others to discuss a matter of public interest. The press was excluded from the meeting. The court held that the meeting should have been held openly, even though a quorum of the city council was not present. The court stated: "[W]e can think of no reason for the Act specifying its applicability to informal meetings of governmental bodies unless it was intended to cover informal but unofficial groups meetings for the discussion of governmental business. . . . Any other construction would obliterate the word `informal' as applied to meetings and make it simpler to evade the Act than to comply with it." Id. at 824. The court rejected the assertion that the FOIA should not apply where the members present could not act to bind the board in any way and could only engage in "discussion." BecauseEl Dorado involved a meeting that did include several members of the governing body itself, it is unclear whether the holding can be extended to purely advisory committees comprised completely of individuals who do not serve on the governing body.
In N. Cent. Ass'n of Colleges v. Troutt Brothers, 261 Ark. 378,548 S.W.2d 825 (1977), the court determined that the state committee of a non-profit national school accreditation organization receiving public funds was subject to the open meetings requirement of the FOIA. At least one duty of the state committee was to make recommendations to its national parent organization as to whether schools should be accredited. Although this duty might be characterized as advisory, the parties did not allege, and the court did not address this issue. The parent organization and its state committee merely argued that nonprofit organizations were not subject to the open meetings requirement. The court disagreed, and noted that given the public great interest in the subject matter (public education), the meeting was required to be open under the Act. Because it is unclear to what extent the state committee in North Central was purely advisory, and because the court did not hinge its decision on this consideration, it is difficult to give NorthCentral precedential effect as to advisory bodies.
In Baxter Co. Nspprs. v. Baxter Gen Hosp. Staff, 273 Ark. 511,622 S.W.2d 495 (1981), the court held that the meetings of a "Credentials Committee" that made recommendations to the medical staff of a hospital concerning which doctors should be granted hospital privileges were subject to the open meetings requirement of the FOIA. Under its bylaws, the Board of Governors of the hospital delegated to the Medical Staff (separately organized with its own bylaws) the authority to evaluate the professional competence of the Medical Staff members for purposes of admission or continuation of the privilege of practicing at the hospital. Under the staff's procedure, a "Credentials Committee" reviewed the information and made a recommendation to the Medical Staff, which then voted on the matter. The Board of Governors of the hospital then acted on such matters on the basis of the Staff's recommendation. The court stated: "We have held that when a Board is subject to the provisions of the act, its committees are also subject to the act [citing Pickens, supra]. Unless the questioned meetings here come under the `except as otherwise specifically provided by law' language of the act, the meetings of the Credentials Committee and of the Medical Staff, which are in issue, must be open meetings." Id. at 513. Unlike the present case, in Baxter Co. the medical staff was expressly delegated the power to make decisions on behalf of the hospital board. And, although it is not entirely clear, it appears that the Credentials Committee was made up entirely of members of the Medical Staff. Cf. Pickens, supra. Thus, the Baxter Co. case does control this issue as to purely advisory bodies that are not composed of members of the governing body.
Finally, in National Park Med. Ctr., Inc. v. Arkansas DHS, 322 Ark. 595,911 S.W.2d 250 (1995), the court held that the open meetings requirement of the FOIA did not apply to the "staff meetings" of the Arkansas Department of Human Services at which the concepts of a bid solicitation were developed. The court did not mention the "governing bodies" language. The court simply quoted the open meetings requirement and concluded without elaboration that the DHS staff was not the type of body contemplated by the open meetings requirement. The court said that to require staff meetings to be held publicly would result in an "administrative nightmare."
A consistent thread running through these decisions is difficult to establish. What we can glean from these cases are the following principles: (1) The meetings of a subcommittee made up wholly of members of the governing body must be held in public. Pickens. (2) The meetings of a body made up in part of members of the governing body must be held in public if the group discusses matters upon which foreseeable action may later be taken by the governing body, and a quorum is not necessary to trigger this requirement. El Dorado. (3) Bodies that have been delegated power to make decisions by the governing body (even if such bodies do not consist of members of the governing body) are subject to the Act. Baxter County Newspapers, supra. (4) Staff meetings of public agencies that do not involve members of a governing body are not required to be held publicly. Nat'l Park Med. Cntr.
The question on which these cases are not helpful is whether a purely advisory committee that is made up wholly of individuals who are not members of the larger governing body must be held in public. Indeed, the court has never stated explicitly that it was basing any of its decisions concerning the FOIA's open meetings requirement on an interpretation of the term "governing bodies" as used in the FOIA
The Purpose of the FOIA and the Court's Policy of Liberal Interpretation
When interpreting the FOIA, it is important to remember the purpose of the law and the liberal approach taken by the Arkansas Supreme Court in construing the FOIA's provisions.
When the General Assembly enacted the FOIA, it expressly stated the purpose of the Act in one of the Act's opening sections, as follows:
 It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.
A.C.A. § 25-19-102.
The Arkansas Supreme Court has long and consistently taken the position that the FOIA should be construed liberally in favor of openness. The court's first statement of this position occurred in Laman v. McCord,245 Ark. 401, 432 S.W.2d 753 (1968), shortly after the enactment of the FOIA. The court said:
 Whether a statute should be construed narrowly or broadly depends upon the interests with which the statute deals. Warfield v. Chotard, 202 Ark. 837, 153 S.W.2d 168 (1941). As a rule, statutes enacted for the public benefit are to be interpreted most favorably to the public. Employers Ins. Co. of Ala. v. Johnston, 238 Ala. 26, 189 So. 58
(1939); Bankers Life Cas. Co. v. Alexander, 242 Iowa 364 45 N.W.2d 258 (1950); Hipp v. Prudential Cas. Surety Co., 60 S.D. 308, 244 N.W. 346 (1932). In the act now before us the General Assembly clearly declared the State's public policy: "It is vital in a democratic society that public business be performed in an open and public manner." We have no hesitation in asserting our conviction that the Freedom of Information Act has passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.
Laman v. McCord, 245 Ark. at 404.
The court has repeated the above-stated view many times, most recently inOrsini v. State, 340 Ark. 665, 670, 13 S.W.3d 167 (2000). The court has also consistently held that exemptions from the FOIA's openness requirements are to be narrowly construed. Arkansas Dep't of Fin. Admin. v. Pharmacy Assocs., 333 Ark. 451, 970 S.W.2d 217 (1998). When a statute attempts to create an exemption to the FOIA, if it is ambiguous or less than clear, it will be interpreted in favor of disclosure. Orsiniv. State, 340 Ark. 665, 13 S.W.3d 167 (2000).
The court has also expressed the view that not only are the ultimate decisions of public bodies intended to be open to the public, but also the deliberations that form the basis for ultimate decisions should be open.[1] The Pickens court, addressing this issue, stated:
 When the General Assembly used the expression "to learn and to report fully [our emphasis] the activities of their public officials", it meant not only the action taken on particular matters, but likewise the reasons for taking that action. Actually, public knowledge of the reasons can well result in a board decision being more acceptable or palatable; to the contrary, decisions rendered in secret, the reasons not being known, can well result in perhaps unjustified criticism of a board. Is not the public entitled to know why a board adopts certain rules or regulations? The "why" is the essence of the action taken.
Ark. Gazette Co. v. Pickens, 258 Ark. at 75.
It could be argued that the governing bodies limitation undercuts the policy of resolving all doubts in favor of openness. Nevertheless, I cannot ignore the plain language of the Act; the General Assembly did explicitly use the term "governing bodies." Moreover, I am mindful of the court's concern in National Park Med. Ctr., Inc. v. Arkansas DHS, supra,
with the "administrative nightmares" that could result from extending the open meetings requirement too far. Absent the "governing bodies" limitation, there is simply no clear line to be drawn with regard to the Act's applicability to situations falling between, for example, committees made up of board members (as in Pickens) and DHS staff meetings (as in National Park). Obviously, there is a line drawn somewhere between those two fact patterns and if it is not based on the words "governing bodies" that is used in the Act, it is unclear on what it is based. The "governing bodies" limitation does at least provide both the public and public officials with some basis upon which to determine who is subject to the open meetings requirement. To abandon that standard without further guidance from the General Assembly or the Arkansas Supreme Court would leave no workable test for determining which entities are subject to the open meetings requirement.
My continued reliance on the "governing bodies" interpretation is also supported by the decisions reached on this issue by the courts of other jurisdictions. See, e.g., Zahavy v. Univ. of Minn., 544 N.W.2d 32
(Minn.App. 1996) (faculty senate judicial committee was not a "governing body" that was subject to open meetings requirement because it did not have decision-making authority); Sovereign v. Dunn, 498 N.W.2d 62
(Minn.App. 1993) (mediation sessions attended by mayor and city council member to resolve border dispute with another city were not subject to open meetings requirement because they did not exercise decision-making power of the governing body.); Minnesota Daily v. Univ. of Minn., 432 N.W2d 189
(Minn. 1988) (university advisory committee on presidential search was not subject to open meetings requirement because it did not have authority to "transact public business," as required by the statute);Internat'l Assoc. of Firefighters, Local 2479 v. Thorpe, 632 P.2d 408
(Okla. 1981) (bargaining negotiations were not subject to open meetings requirement because the negotiators did not have the authority to bind the city); Syracuse United Neighbors v. City of Syracuse,437 N.Y.S.2d 466 (N.Y. 1981) (mayor's advisory task force constituted "public body" that was subject to open meetings requirement because its recommendations were always followed); Sanders v. Benton,579 P.2d 815 (Okla. 1978) (citizens' advisory committee to Board of Corrections was not subject to open meetings requirement because it did not have decision-making authority.); Student Bar Assoc.v. Univ. of North Carolina, 239 S.E.2d 415 (N.C. 1977) (law school faculty was not a "governing body," as that term is used in ordinary speech); Town of Palm Beach v. Gradison,296 So.2d 473 (Fla. 1974) (city zoning commission — even though advisory only — was subject to open meetings requirement that applied to meetings at which official action was taken); Cathcart v. Andersen, 517 P.2d 980
(Wash. 1974) (law school faculty was subject to open meetings requirement because they exercised delegated authority from the Board of Regents of the university, and were thus a governing body); Medlin v. Choat,193 N.W.2d 739 (Neb. 1972) (school district reorganization committee was not a "governing body").[2]
Conclusion
The difficulties that stem from the imprecision of the language of the open meetings requirement of the FOIA and from the available case law on this issue can only be effectively remedied by the General Assembly, or by clear interpretation by the Arkansas Supreme Court. Until such a remedy is forthcoming, I feel constrained to maintain reliance on the "governing bodies" limitation. That is, I maintain my predecessors' view that the open meetings requirement of the FOIA applies only to "governing bodies" (bodies that have ultimate decision-making authority) or to "defacto governing bodies" whose recommendations are "rubber stamped" by a governing body. I emphasize that in my opinion, this interpretation of the FOIA is problematic. Nevertheless, it is my opinion that such an interpretation is necessary until the appropriate judicial or legislative clarification has been provided.
Accordingly, I conclude that under the current language of the FOIA, it was permissible for the professional judgment panels, which appear to be purely advisory in nature, to meet in private. However, I reiterate that the panels were not required to meet privately. Moreover, in light of the public's vital interest in matters concerning public education, it is my opinion that good public policy would have dictated that the panels open their meetings to the public.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] This view of course is limited by any explicit exemptions in the FOIA and elsewhere. See A.C.A. § 25-19-105.
[2] I note that the decisions of the courts of some other jurisdictions that have struggled with this issue are not particularly helpful because they involved statutory language that differed significantly from that of the Arkansas FOIA, in that the statutes of those states included express definitions of such key terms as "governing body," thus giving explicit guidance as to the applicability of the open meetings requirement to particular facts. See, e.g., Clark v. City of Lakewood, 259 F.3d 996
(9th Cir. 2001) (task force of city's planning advisory committee was subject to open meetings requirement because it met Washington's statutory definition of "governing body"); Souder v. Health Partners,Inc., 997 S.W.2d 140 (Tenn.App. 1998) (non-profit preferred provider organization was subject to open meetings requirement because it met Tennessee's statutory definition of "governing body"); Red BlackPublishing Co. v. Board of Regents, 427 S.E.2d 257 (Ga. 1993) (proceedings of student organization court of university were subject to open meetings requirement because it exercised power delegated to it by the governing body); Indiana State Board of Health v. TheJournal-Gazette, 608 N.E.2d 989 (Ind.App. 1993) (hearing conducted by employees of state health department concerning certification of health care provider was not subject to open meetings requirement because it did not meet Indiana statute's definition of "governing body"); SFA v. Dept.of Fisheries, 821 P.2d 1211 (Wash. 1992) (open meetings requirement did not apply to department of fisheries interstate compact on fisheries meetings because department was headed by one individual and did not meet Washington's statutory definition of "governing body"); Hastings v. SouthCentral Human Resources Agency, 829 S.W.2d 679 (Tenn.App. 1991) (grievance committee of state agency was not subject to open meetings requirement because it did not meet Tennessee's statutory definition of "governing body"); Atlanta Journal v. Hill, 359 S.E.2d 913 (Ga. 1987) (advisory panel to mayor was not subject to open meetings requirement because it had no authority to take official action, as required by Georgia's statutory definition of "meeting"); Refai v. Central WashingtonUniv., 742 P.2d 137 (Wash.App. 1987) (faculty senate was not subject to open meetings requirement because it did not meet Washington's statutory definition of "governing body"); City of Vicksburg v. Vicksburg Printingand Publishing Co., 434 So.2d 1333 (Miss. 1983) (meeting of planning commission was not subject to open meetings requirement because it fell within specific statutory litigation exemption); Fain v. Univ. of Tenn.,552 S.W.2d 752 (Tenn. 1977) (faculty and committees of law school were not subject to open meetings requirement because they did not meet Tennessee's statutory definition of "governing body"); Washington SchoolDistrict No. 6 v. Martin, 541 P.2d 1137 (Ariz. 1975) (textbook evaluation committee was not subject to open meetings requirement because it did not meet Arizona's statutory definitions of "governing body" or "meeting");McLarty v. Board of Regents, 200 S.W.2d 117 (Ga. 1973) (student activity fund committee was not subject to open meetings requirement because its meetings did not meet Georgia's statutory definition of "meeting"). A review of the statutory language that has been employed by these other states' legislatures, and how their courts have interpreted that language, may be helpful to our General Assembly in attempting to clarify the language of the Arkansas FOIA.