W. F. LAMAN, ET AL v. ROBERT S. MCCORD ET AL

5-4598                                    432 S.W. 2d 753

Opinion Delivered October 21, 1968

*John T. Harman* and *Leon B. Catlett* for appellants.

*Rose, Meek, House, Barron, Nash & Williamson* for appellees.

GEORGE ROSE SMITH, Justice.   On April 24, 1967, the North Little Rock city council held a regular meeting at the city hall.   At the end of the meeting the council voted to go into closed session with the mayor and city attorney to discuss a Public Service Commission proceeding to which the city was a party. All members of the public, including one of the appellees, were excluded from the closed session.

The appellees, then the editor and managing editor of The Times, a North Little Rock newspaper, brought this suit against the mayor, city attorney, and aldermen, for a judgment declaring that the closed session had been in violation of our Freedom of Information Act. Act 93 of 1967; Ark. Stat. Ann., Title 12, Ch. 28 (Supp. 1967).   This appeal is from a judgment declaring that the meeting was in violation of the act and that the city council cannot meet secretly to discuss legal matters with the city attorney.

The Freedom of Information Act, dealing with public records and public meetings, was passed at the first regular session of the legislature following two decisions of this court defining to some extent a citizen's right to examine public records.   *Republican Party of Ark. v. State ex rel. Hall*, 240 Ark. 545, 400 S.W. 2d 660 (1966) ; *Gaspard v. Whorton*, 239 Ark. 849, 394 S.W. 2d 621 (1965).   As far as the case at bar is concerned, the pertinent parts of the act are as follows:

> Section 2.   Declaration of Public Policy.   It is vital in a democratic society that public business be performed in an open and public manner so that

the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this act is adopted, making it possible for them, or their representatives, to learn and to report fully the activities of their public officials.

\* \* \*

Section 5. Open Public Meetings. Except as otherwise specifically provided by law, all meetings formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and School Districts, and all boards, bureaus, commissions, or organizations of the State of Arkansas, except Grand Juries, supported wholly or in part by public funds, or expending public funds, shall be public meetings.

The time and place of each regular meeting shall be furnished to anyone who requests the information.

In the event of emergency, or special, meetings the person calling such a meeting shall notify the representatives of the newspapers, radio stations and television stations . . . at least two hours before such a meeting takes place in order that the public shall have representatives at the meeting.

Executive sessions will be permitted only for the purpose of discussing or considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee.

Executive sessions must never be called for the purpose of defeating the reason or the Spirit of the Freedom of Information Act.

\* \* \*

Section 10. [Emergency.] It is hereby found and determined by the General Assembly that the proper functioning of a democratic society is dependent upon the public being informed at all times with respect to the operations of government, and public officials shall at all times be held accountable for their public actions and conduct; . . . that many agencies are now holding executive or closed sessions . . . which is contrary to the spirit of the public business being transacted in open public meetings . . .

At the outset we reject the city's contention that the Freedom of Information Act is a penal statute, to be strictly construed. It is true that the act (§ 7) provides that its willful violation is a misdemeanor, punishable by a fine or jail sentence. Such a provision, however, does not make the entire statute penal. For instance, the workmen's compensation act makes it a misdemeanor for an employer to fail to provide compensation coverage for his workmen. Ark. Stat. Ann. § 81-1339 (Repl. 1960). We have nevertheless held, in passing upon that very duty to provide coverage, that the compensation act is to be liberally construed. *Brooks* v. *Claywell,* 215 Ark. 913, 224 S.W. 2d 37 (1949).

Whether a statute should be construed narrowly or broadly depends upon the interests with which the statute deals. *Warfield* v. *Chotard,* 202 Ark. 837, 153 S.W. 2d 168 (1941). As a rule, statutes enacted for the public benefit are to be interpreted most favorably to the public. *Employers Ins. Co.x of Ala.* v. *Johnston,* 238 Ala. 26, 189 So. 58 (1939); *Bankers Life & Cas. Co.* v. *Alexander,* 242 Iowa 364, 45 N.W. 2d 258 (1950); *Hipp* v. *Prudential Cas. & Surety Co.,* 60 S.D. 308, 244 N.W. 346 (1932). In the act now before us the General Assembly clearly declared the State's public policy: "It is vital in a democratic society that public business be performed in an open and public manner." We have no

hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.

The language of the act is so clear, so positive, that there is hardly any need for interpretation. The heart of the act, in its application to this case, lies in Section 5: ''Except as otherwise specifically provided by law, all meetings formal or informal, special or regular, of the governing bodies of all municipalities . . . shall be public meetings.'' On April 24, 1967, the North Little Rock city council was unquestionably the governing body of a municipality. Its closed session was unquestionably a meeting, formal or informal, special or regular. How, then, can it be said that the closed session was not a violation of the statute?

Counsel for the city base their arguments entirely on the attorney-client privilege. They insist that the statute should not be construed to apply to a meeting between the city council and the city attorney. It is predicted that the city will not be able to prepare its cases for trial without disclosing its strategy and its· weaknesses to its adversaries.

We think that, as a practical matter, counsel are unduly apprehensive about the impact of the act upon municipal litigation. The city attorney, with the assistance of the mayor, department heads, and other municipal employees, can certainly prepare a case for trial without discussing his plans in detail with the city council. By analogy, the State of Arkansas is continually engaged in litigation, but there is scant occasion for its Attorney General or its other legal counsel to confer in secret with the members of the General Assembly.

Regardless of such practical considerations, the act itself effectively refutes the appellants' argument. The legislative mandate cannot be misunderstood: ''Except as otherwise *specifically* [our italics] provided by law,

all meetings ... of the governing bodies of all municipalities ... shall be public meetings." The key word is "specifically," meaning "explicitly," "definitely," "in so many words." The legislature itself provided a specific exception in Section 5 of the act, having to do with personnel matters. It did not see fit to provide a similar exception for meetings between the city council and the city attorney.

The attorney-client privilege, originally a common-law immunity, now rests upon a section of the Civil Code, adopted in 1869, which provides that an attorney is incompetent to testify about his client's communications without the client's consent. Ark. Stat. Ann. § 28-601 (Repl. 1962). For us to say that the section just cited, dealing only with a testimonial disqualification, "specifically" provides that the city council may consult its attorney in secret would simply amount to striking the word "specifically" from the Freedom of Information Act.

A point not to be overlooked is that the legislature necessarily had to make a policy decision in drafting the Freedom of Information Act. On the one hand, to deny to the city council the right to meet in secret with the city attorney might in some instances work to the public disadvantage. But, on the other hand, to allow the council to go into executive session at any time, upon the pretext of consulting the city attorney about legal matters, might readily open the door to repeated and undetectable evasions of the Freedom of Information Act—also to the public disadvantage. Policy decisions such as that are peculiarly within the province of the legislative branch of the government. In this instance that branch has spoken so unequivocally that its command cannot be misunderstood. Our duty is simply to give effect to its mandate.

The trial court was right; its judgment is affirmed.

HARRIS, C.J. and FOGLEMAN, J., concur.

JOHN A. FOGLEMAN, Justice. In view of the language of the act requiring that meetings of the governing bodies of municipalities shall be public "except as otherwise specifically provided by law," I agree that exceptions can only be made by statutory law. I do not think that Ark. Stat. Ann. § 28-601 (Repl. 1962) is amended or repealed by Act 93 of 1967, either expressly or by implication. There is no conflict between these acts because § 28-601 does not specifically provide for private conferences between attorney and client. That section simply affords a measure of protection to the client against disclosure of the subject matter of those conferences. Thus, there is no specific provision of law which permits the governing board of a city collectively to have the advantage of confidential communication with its attorney.

I do not agree, however, that the scope of the attorney-client privilege is as limited as might be inferred from the majority opinion.

The privilege is designed to protect from disclosure not only the communications of client to attorney, but also the advice of the attorney based thereon. The protection is not limited to matters which are the subject of pending cases. This court said in *Bobo* v. *Bryson*, 21 Ark. 387:

"* * * This protection extends to every communication which the client makes to his legal adviser, for the purpose of professional advice or aid, upon the subject of his rights and liabilities. Nor is it necessary that any judicial proceedings in particular should have been commenced or contemplated; it is enough if the matter in hand, like every other human transaction, may by possibility become the subject of judicial enquiry. The great object of the rule seems plainly to require that the entire professional intercourse between client and attorney, whatever it may have consisted in, should

be protected by profound secrecy. See 1st Green-leaf 303.''

The statute not only protects the client from disclosure by the attorney, it also excuses the client from being compelled to disclose his confidential communications to his attorney or the advice given by the attorney. *Casey* v. *The State*, 37 Ark. 67.

Only a small fraction of a city council's need for legal consultation and advice arises in connection with the preparation of cases for trial. Even in pending proceedings the need for confidential communications on settlement possibilities and settlement authority is critical.

I fail to see the analogy between the relationship of the Attorney General and the General Assembly and that of a city attorney and a city council. The duties of the General Assembly are legislative only. Those of a city are often as much in the executive field as the legislative. Certainly the powers of a city council are not limited to legislative functions. It has many duties which are administrative and ministerial.

The doctrine of separation of powers applied at the state level is not usually applied to municipal corporations and has never been regarded as fully appropriate in the performance of municipal functions. McQuillin, Municipal Corporation, §§ 9.20, 10.3; C.J.S. 489, Constitutional Law, § 106. It has not been the practice in Arkansas to separate these powers to any great degree. In a city such as North Little Rock, corporate authority is vested in a mayor and city council. Ark. Stat. Ann. § 19-901 (Repl. 1956). The city council, in addition to all legislative powers, possesses all corporate powers not prohibited by the General Assembly or its own ordinances. § 19-1011. Among its powers are the management and control of finances and of the property of the municipal corporation. § 19-1011. Consequently,

the need of the city council for legal advice and consultation is far different than that of the General Assembly.

There is a strong implication in *Morgan* v. *Wells*, 242 Ark. 499, 415 S.W. 2d 323, that the general rule that communications made in the presence of third persons are not privileged or confidential is applicable to the attorney-client relationship. See, Barnhart, Theory of Testimonial Competency and Privilege, 4 Ark. Law Rev. 377, 402.

Thus, there is little doubt that the Freedom of Information Act has deprived each agency named therein (as a body) of free communication with, and unrestrained advice from, its attorneys, in confidence.

It is not our function to look into the wisdom of this action or the advisibility of the public purpose sought to be accomplished. *Berry* v. *Gordon*, 237 Ark. 547, 865, 376 S.W. 2d 279; *Beaumont* v. *Faubus*, 239 Ark. 801, 394 S.W. 2d 478; *McCastlain* v. *Oklahoma Gas & Elec. Co.*, 243 Ark. 506, 420 S.W. 2d 893; *Haynie* v. *City of Little Rock*, 243 Ark. 86, 418 S.W. 2d 633.