The Honorable Mary Estill Buchanan Secretary of State 127 State Capitol Building Denver, Colorado 80203
Dear Mrs. Buchanan:
QUESTION PRESENTED AND CONCLUSION
You have asked several questions concerning the scope, application and interpretation of Part 3 of the Colorado Sunshine Act of 1972, entitled Regulation of Lobbyists, C.R.S. 1973, 24-6-301, et seq. (hereinafter referred to as Part 3).
 In response to your questions, I have undertaken an extensive review of Part 3 in an attempt to clarify several of the provisions which appear to be the source of the confusion.
ANALYSIS
First, it should be noted that the Sunshine Act is a voter-initiated law passed by the people of the State of Colorado in 1972. It is designed to protect the public interest by opening the governmental processes to public scrutiny. It is settled that a law designed to protect the public interest should be construed to favor the public. The Colorado Supreme Court, in construing two statutes concerning open meetings, stated that:
 As a rule, these kinds of statutes should be interpreted most favorably for the beneficiary, the public.Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753 (1968).
Bagby v. School District Number 1, Denver, 186 Colo. 428, 528 P.2d 1299
(1974) at p. 1302. In Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753
(1968), cited with approval in Bagby, the court applied the following rule of construction to the Arkansas Freedom of Information Act,[1]
which is similar in many respects to the Colorado Sunshine Act:
 Whether a statute should be construed narrowly or broadly depends on the interests with which the statute deals . . . . As a rule, statutes enacted for the public benefit are to be interpreted most favorably to the public . . . . We have no hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.
432 S.W.2d at 755.
See also: Canney v. Board of Public Instruction, 278 So.2d 260 (Fla. 1973); City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971). Such a statute should be construed so as to frustrate all evasive devices.PalmBeach v. Gradison, 296 So.2d 473 (Fla. 1973).
Additionally, C.R.S. 1973, 2-4-201, states in part that
(1) In enacting a statute, it is presumed that . . . .
(e) Public interest is favored over any private interest.
Public interest in this instance involves the public's right to know. Accordingly, any doubts or ambiguities in the law should be resolved in favor of full and complete disclosure.
When interpreting the Sunshine Act, it is essential to keep in mind the overall intent of the law in order that its basic purposes may be achieved. Part 3 is similar in most respects to the Federal Regulation of Lobbying Act,[2] which was subject to interpretation by the Supreme Court in United States v. Harriss, 347 U.S. 612 (1953). The Court said:
 Present-day legislative complexities are such that individual members of Congress cannot be expected to explore the myriad pressures to which they are regularly subjected. Yet full realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly evaluate such pressures. Otherwise the voice of the people may all too easily be drowned out by the voice of special interest groups seeking favored treatment while masquerading as proponents of the public weal. This is the evil which the Lobbying Act was designed to help prevent.(Citations omitted.)
347 U.S. at 625.
The purpose of Part 3 is not to prohibit, or even regulate, lobbying activities. It is merely to require that those involved in such activities register and make certain disclosures so that the legislators and the public may be able to evaluate the pressures brought to bear on the legislative processes.
A.SCOPE OF THE ACT
In analyzing Part 3, it should be noted at the outset that there are two sections concerning disclosure, C.R.S. 1973, 24-6-302 and 304. C.R.S. 1973, 24-6-302(3) contains the touchstone of the Act when it states that the disclosure provisions of said section apply to:
 Any person, except a political committee, who by himself or through any agent, employee, or other person in any manner whatsoever, directly or indirectly, solicits, collects, or receives money or any other thing of value to be used in any manner to aid in or to influence:
 (a) The passage or defeat of any legislation by the general assembly or the approval or veto of any legislation by the governor of this state;
 (b) The adoption or defeat of any standard, rule, rate or decision of any board or commission of this state which has been delegated rule-making authority by the general assembly.
Thus, any person, as defined in 24-6-301(4), who engages in such activities (hereinafter referred to as "covered activities") is required to file disclosure statements of expenditures and contributions pursuant to 24-6-302(1) and (2). Also, because a person who is reimbursed for expenses incurred in connection with covered activities is collecting or receiving money, such a person would be required to file a disclosure statement under section 302. There is, however, no requirement that a person subject only to section 302 register with the Secretary of State.
Pursuant to section 304, a person must be paid or expect to be paid for such covered activities before he is required to register:
 (1) Any person who engages himself or is engaged by any other person for pay or for any consideration for any of the purposes described in section 24-6-302(3) shall, before doing anything in furtherance of such purposes, register with the secretary of state.
Section 304 goes on to require an initial registration statement and the filing of monthly reports under oath. Thus, in general terms, a paid lobbyist is required to register under section 304,[3] while an unpaid lobbyist is required to disclose under section 302. The application of these sections can be clarified by reference to specific types of organizations and situations.
1.THE MULTI-PURPOSE ORGANIZATION
For purposes of this opinion, a multi-purpose organization is one engaged in a range of activities, only one of which is lobbying. This category would include organizations such as public interest groups, chambers of commerce and trade associations. They are required to file disclosure statements under section 302 if they "solicit, collect or receive money . . . to be used in any manner to aid in or influence . . . the passage or defeat of legislation . . . ."[4] If the organization is not receiving pay or compensation, it would not be required to register, since the registration requirements of section 304 turn on being engaged for pay.
However, it is clear that any individual receiving money or other consideration from such an organization for engaging in covered activities would be required to register under section 304. This is so regardless of whether the individual is an employee of the organization or an independent contractor. Thus, if a multi-purpose organization employs an individual to engage in covered activities, the organization must file monthly disclosure statements under section 302 and the individual must register under section 304. If the individual is not paid, e.g. a volunteer, he need not register or disclose under either section, unless he is reimbursed for expenses. The organization would report all expenses and expenditures for covered activities, including those reimbursed to the individual.
2.THE LAW FIRM
A law firm is clearly a "person" as defined in section 301(4). If it is engaged for pay or for any consideration for any of the covered activities, it must register under section 304.[5] Thus, if a law firm received money from a client for the purposes of aiding in or influencing the passage or defeat of a particular bill, it must register and disclose. In addition, any paid member, partner, or employee of a law firm who engages in covered activities must also register under section 304. As discussed below, the reporting requirements in such a situation can be construed so as to avoid unnecessary duplication. These requirements would apply to any profit organization, such as a partnership of lobbyists, which is paid for the activities described in section 302(3)(a).
3.THE NORMAL BUSINESS ENTITY
In most cases, a business entity engaged in normal business activities need not register or disclose, since it would be difficult to argue that money received from such activities constitutes soliciting, collecting or receiving money to be used for the purposes in section 302(3)(a) and (b). Thus, a coal mining company that hires a paid lobbyist need not disclose or register if the source of such money arises from normal business activities. However, any individual, whether an employee or independent contractor, who is paid to engage in covered activities by such an entity, is required to register and disclose. Also, if the entity solicited money from other persons for covered activities it would be required to disclose under section 302.
It is pertinent to note that 24-6-307 makes it unlawful for any person to employ any person who is required to be registered under section 304 but is not so registered.
4.ADJUDICATORY HEARINGS
In regard to the scope of the act, the question has been raised as to whether "covered activities" includes appearances before a board or commission sitting in an adjudicatory capacity. Technically, it could be argued that the decision of a board or commission in an adjudicatory hearing falls within the scope of the Act because it involves:
 (b) The adoption or defeat of any standard, rule, rate, or decision of any board or commission of this state which has been delegated rule-making authority by the general assembly. (Emphasis added.)
However, the words "or decision" must be viewed in the context of the entire phrase, which relates to the rule-making authority. Thus, a more reasonable construction is that a decision in this case means something similar to a standard, rule or rate, such as a policy matter, and was not intended to include the separate and distinct quasi-judicial or adjudicatory functions. This does not violate the spirit of full disclosure, since in an adjudicatory hearing it would normally be apparent on whose behalf an individual was appearing.
B.LOBBYING
It is important to note that the Act does not attempt to define the term "lobbying." In fact, such an attempt would be a futile effort, since it would be virtually impossible to delineate or specify all the types of activities which require registration and disclosure.[6] Instead, Part 3, like the federal law, sets forth a number of objective criteria which, if met, require disclosure and registration. See discussion, SCOPE OF THE ACT, supra.
The Supreme Court in Harriss, supra, held that in order for a person to be required to register there must be a direct communication.[7]Harriss did not hold, however, that the communication had to be in the form of a personal contact. In fact, part of the lobbying effort involved in Harriss was a mail campaign.[8] Thus, any form of communication, including letters, phone calls and telegrams, is sufficient to touch off the registration and disclosure requirements if it results in a communication to the officials mentioned in 302(3).[9]
It is important not to confuse the requirements of a direct communication for registration and disclosure with the scope of the activity which must be revealed once disclosure is required. Under both sections 304 and 302, all contributions received or money expended which relate, even though indirectly to the communication, must be reported. This would clearly include time spent in: (a) preparation for the communication; (b) drafting or preparing documents relating to the communication efforts, whether the documents prepared constitute a communication or not; (c) research, data collection, or any information gathering process relating to the proposed communication; (d) the communication itself; (e) and post-communication activities, such as reports by the lobbyist to his client. To interpret the law, as some urge, to apply only to the time spent in the actual communication, would result in an absurdity. This would be contrary to basic principles of statutory construction. Denver v.Holmes, 156 Colo. 586, 400 P.2d 901 (1965). If such a construction were adopted, a lobbyist paid $1,000.00 for a 10 hour effort in regard to a particular bill, but who spent only an hour in actual communication with legislators, would only be required to report $100.00. Such a result would clearly subvert the intent of the disclosure requirement of the law. The information filed would be close to meaningless in terms of enabling the legislators and the people to evaluate the pressures brought to bear on the legislative processes. Although such practices may have been accepted in the past, they should not be accepted in the future.
C.DISCLOSURE REQUIREMENTS
It should be stressed again that Part 3 is a law of disclosure for the public interest and as such requires a liberal interpretation so that its purposes may be achieved. The purpose in this instance is full exposure to public view of amounts and sources of money spent and received to influence the legislative process.
In dealing with the disclosure requirement, a threshold question concerns the applicability of the different disclosure requirements in sections 302 and 304. Section 302 requires the filing of reports by any person who ". . . solicits, collects, or receives money . . . to be used in any manner to aid in or influence . . . the passage or defeat of any legislation . . . ." Section 304 requires the filing of reports by any person ". . . who engages himself or is engaged by any other person for pay . . . for any of the purposes described in section 24-6-302(3) . . . ." It is clear that a person required to disclose, but not register, files statements pursuant to section 302. The issue arises as to whether a registering person discloses monthly pursuant to both sections 302 and 304 or only pursuant to section 304. A careful analysis yields the conclusion that the requirements of both sections in regard to monthly reports are essentially the same. In most instances of difference, the requirements of section 304 are more stringent or broader in applicability than section 302, although section 302 does require some details not required by section 304. An example would be that reports under section 302 require the name and address of each person contributing $25.00 or more, while section 304 does not appear to require names and addresses. In terms of the disparities under the comparable sections in the federal act, it has been stated that they are "differences in phraseology rather than differences in substance — differences in form rather than differences in function."[10]
Consequently it has been recommended that compliance with both sections can be accomplished by a single report.[11] Accordingly, it is my opinion that a registering person is required to report all of the information listed in sections 302 and 304, and that this can best be accomplished by reporting on a single form containing the requirements of both sections.
D.CONTRIBUTORS AND EXPENDITURES
Persons required to disclose under section 302 must file a:
Statement with the secretary of state within ten days after the close of each calendar month in which such contribution is received . . . and shall file a cumulative statement on or before January 15 for the preceding calendar year, containing:
 (a) The name and address of each person who has made a contribution totaling twenty-five dollars or more since January 1, 1973, or since the last report required by this part 3;
 (b) The total sum of the contributions made to or for such person during the calendar year and not stated under paragraph (a) of this subsection (1);
 (c) The total sum of all contributions made to or for such person during the calendar year.
Since Harriss decided that the requirement of Section 307 of the federal law (after which 302(3) is patterned) qualifies the obligation to register and disclose, it likewise follows that only those contributions received which relate to covered activities need be disclosed.[12]
The application of this section can be clarified by reference to specific situations. A multi-purpose organization whose primary source of income is fees, dues, or the like, would key its statement of contributions to its statement of expenditures. Thus, if it received $200,000 in dues, and spent $50,000 for covered activities, it would report $50,000 as contributions under (b) and (c) above. This would not, however, obviate the requirement of a separate itemization under (a) of the name, address and amount of each person contributing $25.00 or more if any portion thereof were used for covered activities.
A registered law firm would simply report all fees from all sources which were compensation relating to covered activities. It would also report all expenses for which it was reimbursed by the client. The individual partner engaged in lobbying activities would report the proportion of his salary or "draw" received in the month in relation to time spent lobbying. Thus, if a partner made $4,000 in February and spent 25% of his time in lobbying activities, he would report $1,000.00 as contributions received. Since the law firm would be reporting the source of the money by clients and amount, the partner need report only the client's name on whose behalf he was lobbying. It should be stressed in this regard that in computing the amount of time spent for disclosure purposes, the lawyer must include all activity, including conferences, research and travel time which relates directly or indirectly to covered activities.
Several questions have been raised concerning the application of 302(1)(d) which requires disclosure of:
 (d) The name and address of each person to whom an expenditure in the aggregate amount or value of twenty-five dollars or more has been made by or on behalf of such person within the calendar year and the amount, date and purpose of such expenditure.
This section is the heart of the Act since it essentially deals with disclosure of money spent by persons to aid in or to influence the passage or defeat of legislation. The phrase "in the aggregate amount" implies that expenditures are cumulative in regard to the threshold amount. If this is so, it is only consistent to conclude that once that threshold amount is reached, all expenditures to the same person must be reported. Consequently it is my opinion that the interpretation of this section most consistent with the purpose and intent of the Act requires that once a person has made expenditures totalling $25.00 to a particular person, the last expenditure and each subsequent expenditure, regardless of amount, to the same person, must be reported. Thus, if on January 1 a lobbyist spends $25.00 at Joe's Lounge on behalf of two legislators, he must report all subsequent expenditures at Joe's regardless of amount. This interpretation also applies to amounts spent on individual legislators. Thus, once a lobbyist makes expenditures totalling $25.00 to or on behalf of a particular legislator, the last expenditure and all subsequent expenditures, regardless of amount, to or on behalf of the same legislation must be reported. In addition, in order to meet the requirement of "amount, date and purpose," each expenditure must be itemized in terms of the specific legislator on whose behalf the expenditure was made, and the specific pieces of legislation if any discussed or under consideration.
You have asked specifically whether statements of contributions and expenditures should be on a cash or accrual basis. Section 302 states that the required statement shall be filed within 10 days of the calendar month "in which such contribution is received or expenditure made." The issue arises in a situation where a disclosing person incurs the obligation to make an expenditure in a particular month, but does not make actual payment until a later date. Likewise, a disclosing person may perform activities in a particular month for which he is to be paid, but may not actually receive payment therefor until some months later.
The definitions of contributions and expenditures in 24-6-301 both include "a contract, promise, or agreement, whether or not legally enforceable . . ." to make a contribution or an expenditure. This language would appear to require the reporting of the expenditure or contribution in the month in which the right to receive the contribution or the obligation to make the expenditure was incurred. This conclusion is also in keeping with the spirit and intent of the Act since it will allow the legislators and the public to more accurately track the expenditure of funds in relation to specific pieces of legislation.
E.REGISTRATION
Lastly you have asked whether the registration of a person under 24-6-304
is effective for the remainder of the calendar year in which it is made. You cite the situation in which a person files and withdraws a registration statement during the year based on his determination of whether he has or will be engaged in current activities during that time period. Such conduct clearly defeats the intent of the Act in that it enables a person, by allowing him to file and withdraw at will, to avoid the comprehensive reporting scheme of section 304. In addition, the last sentence of section 304 states that:
 Such person shall file an updated statement on or before January 15 of each year unless he at that time is no longer engaged for pay or other consideration for the purposes specified in section 24-6-302(3).
The clear implication of this statement is that the cessation of covered activities is a relevant factor in regard to registration only in terms of filing or not filing the updated statement. Additionally, subsection (2) of 24-6-304 states that:
 Each person so registering shall, ten days after the close of each calendar month in which he has been engaged in any of the activities described in Section 24-6-302(3), file with the secretary of state a disclosure report . . . .
Thus, if a registered person does not engage in covered activities for a particular month, and if he does not receive contributions or make expenditures during said month, the statute relieves him of his responsibility to file the monthly report. It does not allow him to withdraw his registration. Accordingly, it is my opinion that once a person registers under section 304, that registration is effective for the remainder of the calendar year.
I will be pleased to answer any further questions you may have on this subject.
SUMMARY
The Colorado Sunshine Act, C.R.S. 1973, 24-6-301, et seq., was passed in the public interest, particularly involving the public's right to know certain information about legislative processes. Accordingly any doubts or ambiguities in the law should be resolved in favor of full and complete disclosure. C.R.S. 1973, 24-6-302 requires any "person," as broadly defined in 24-6-301(4), who engages in any action affecting legislation or agency rule-making to file disclosure statements of expenditures and contributions pursuant to 24-6-302(1) and (2). Also any such "person" who is paid or expects to be paid for such activities must also register pursuant to 24-6-304. These requirements apply to multi-purpose organizations and law firms who engage in lobbying. However, the requirement does not necessarily apply to the normal business entity which engages a lobbyist. The "covered activities" under the act include all the activities which relate to the lobbying effort. However, appearances before boards and commissions acting in a adjudicatory capacity are not included. Disclosure and registration requirements, while separately defined, may be accomplished on a single form. Disclosure requirements apply only to contributions and fees which relate to the "covered activities." Registration under 24-6-304 is effective for the remainder of the calendar year and once made, cannot be withdrawn.

 Very truly yours,
 J.D. MacFARLANE
 Attorney General
LOBBYING
SECRETARY OF STATE

C.R.S. 1973, 24-6-301 C.R.S. 1973, 24-6-302 C.R.S. 1973, 24-6-304 C.R.S. 1973, 24-6-307 C.R.S. 1973, 2-4-201
SECRETARY OF STATE DEPT. Elections, Div. of LEGISLATIVE BRANCH
The Colorado Sunshine Act, C.R.S. 1973, 24-6-301, et seq., was passed in the public interest, particularly involving the public's right to know certain information about legislative processes. Accordingly any doubts or ambiguities in the law should be resolved in favor of full and complete disclosure. C.R.S. 1973, 24-6-302 requires any "person," as broadly defined in 24-6-301(4), who engages in any action affecting legislation or agency rule-making to file disclosure statements of expenditures and contributions pursuant to 24-6-302(1) and (2). Also any such "person," who paid or expects to be paid for such activities must also register pursuant to 24-6-304. These requirements apply to multi-purpose organizations and law firms who engage in lobbying. However, the requirement does not necessarily apply to the normal business entity which engages a lobbyist. The "covered activities" under the act include all the activities which relate to the lobbying effort. However, appearances before boards and commissions acting in an adjudicatory capacity are not included. Disclosure and registration requirements, while separately defined, may be accomplished on a single form. Disclosure requirements apply only to contributions and fees which relate to the "covered activities." Registration under 24-6-304 is effective for the remainder of the calendar year and once made, cannot be withdrawn.
[1] Ark. Stats. Ann. 12-2801 et seq. (1947), as amended Acts 1967, No. 93.
[2] U.S.C.A. section 261 et seq.
[3] For a discussion of the disclosure requirements for a paid lobbyist, see p. 9-10.
[4] See section 302(3) set forth on p. 4 for a full description of covered activities.
[5] To the extent that this is in conflict with the answer to Question 7, Attorney General's Opinion 73-0003, which possibly could be interpreted to limit the registration requirements to individuals, said opinion is hereby superceded. Not only is the statutory definition of persons not restricted to individuals, C.R.S. 1973, 24-6-301(4), but such an interpretation would be too narrow. See H.R. Rep. No. 3239, 81st Cong. 2d Sess. 6 (1951) wherein it is stated:
 Our investigation has shown that most of the business is attempting to influence legislation is carried on by groups. Any statute which attempted to deal with the problems in terms of the individual lobbyist would reach only a small part of lobbying activities. Compliance by groups is basic to any effective reporting statute in this field.
[6] See S.Rep. No. 395, 85th Cong., 1st Sess. 64 (1957); H.R. Rep. No. 3138, 81st Cong., 1st Sess. 5-8 (1950).
[7] 347 U.S. 612 at 622, 623.
[8] Id at p. 620.
[9] This should not be construed to exclude organized efforts to communicate involving third persons, such as the artificially stimulated letter campaign in Harriss, supra. To the extent that this paragraph conflicts with the answer to Questions 7 and 14, Attorney General's Opinion 73-0003, which might be interpreted to require personal contact, said opinion is hereby superceded.
[10] Futor, An Analysis of the Federal Lobbying Act, 10 Fed. B. J. 366, 380 (1949)
[11] H.R. Rep. No. 3239, 81st Cong., 2d Sess. 21-22 (1951).
[12] In regard to expenditures for entertainment made by a registered person for which he is not reimbursed, he would, at a minimum, be required to disclose them if he deducted them as business expenses on his income tax returns.