Ms. Rebecca L. White 124 Windamere Drive Hot Springs, AR 71913
Dear Ms. White:
You have requested an Attorney General opinion, pursuant to A.C.A. §25-19-105(c)(3)(B), a provision of the Freedom of Information Act (FOIA), concerning the release of certain records.
You report that on September 18, 2000, you requested certain records from Ms. Dina Tyler, the custodian of records for the Department of Corrections at Pine Bluff, Arkansas. In your request, you seek the following:
 Under the Freedom of Information Act of 1967 and all amendments, I am requesting to review and/or obtain copies of all records pertaining to the investigation of an intimate relationship between Inmate #73996 Roger Martin and Garland County Deputy Leoma Adkins. This relationship occurred when Roger Martin was an inmate at the Garland County Jail under the State 309 program. I am also requesting to review the records of the actual move of the inmate from Garland County back to Pine Bluff.
In correspondence dated September 19, 2000, Ms. Tyler offered the following as her basis for denying the first of your requests and at least partially granting the second:
 I am unable to provide the internal affairs records you seek because under Arkansas Code Annotated 25-19-105(c)(1), they are exempt from disclosure. Since these records concern a specific incident, a specific employee and detail actions within the scope of employment, they are considered job performance records and cannot be released unless the employee was suspended or terminated as a result of the investigation. The records in question did not form the basis for the suspension or termination of any employee. For reference, please see Ops. Att'y Gen. 95-151, 92-319, 92-207, 91-296, 91-153, 91-003, 89-073, 89-036 and 88-162.
 In addition, you have requested to review the "records of the actual move of the inmate from Garland County back to Pine Bluff." The only records I am aware of concerning the "actual move" would be movement listings contained in the inmate's jacket and the department's inmate tracking system. A copy of the movement sheet from the inmate tracking system is enclosed. Since medical records are exempt from disclosure, the inmate's medical classification has been redacted.
In your request to me of September 20, 2000, you take issue only with Ms. Tyler's denial to you of access to documents she characterizes as employee evaluations or job performance records. Accordingly, I will focus below only on this question and leave unaddressed whether Ms. Tyler should have produced "movement listings contained in the inmate's jacket" along with data from the inmate tracking system.[1]
RESPONSE
I am directed by law to issue my opinion as to whether the custodian's determination regarding the release of the requested records is consistent with the FOIA. A.C.A. § 25-19-105(c)(3)(B). In my opinion, if the custodian of records has simply denied your request without reviewing the records, the blanket denial offends the dictates of the FOIA. The Arkansas Supreme Court has recently upheld the right of an inmate to be heard on her claim that a blanket denial of access to certain public records violated the FOIA. See Orsini v. State, 340 Ark. 665,13 S.W.3d 167 (2000). Assuming the custodian conducted the required review, the propriety of her decision to deny you access can only be tested by a finder of fact applying the standard discussed below.
As an initial matter, I must note that I have not been provided with copies of the records you have requested and do not know what particular records would be responsive to your request. I therefore cannot opine conclusively as to the disclosability of any particular record. Nevertheless, I can and will provide you with the legal standard to be applied in determining whether the records must be disclosed.
Generally, the documents you have requested constitute "public records" within the meaning of the FOIA. "Public records" are defined as:
 writings, recorded sounds, films, tapes, or data compilations in any form, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(1). Under the FOIA, "public records" must be disclosed unless they are exempt from disclosure either under an exemption set forth in the FOIA itself or under an exemption provided by some other law. A.C.A. § 25-19-105(a).
You note in your request that the custodian in this case has declined to produce requested records because she deems them exempt employee evaluation or job performance records. Under A.C.A. § 25-19-105(c)(1) (Supp. 1999), employee evaluations and job performance records are subject to inspection and photocopying only if (1) the employee has been suspended or terminated; (2) the records formed a basis for the suspension or termination decision; (3) all administrative appeals of the decision are final; and (4) there is a compelling public interest in disclosure. You have protested that this exemption is not available to the Department of Corrections because the only individuals being evaluated in the documents at issue are employees of the Garland County Sheriff's Department, not the Department of Corrections.
I must note at the outset that I am neither authorized nor equipped to make a factual determination regarding the status of documents I do not possess and have not reviewed. At most, I can opine on the operation of applicable law given an assumed set of facts. For purposes of my analysis, then, I will assume that the sheriff's department prepared an incident report relating to the alleged misconduct of one or more of its employees in dealing with a prison inmate who was temporarily housed in the county jail to participate in a community-service program. I will further assume that the Department of Corrections obtained this incident report for the purpose of reviewing the inmate's own possible misconduct. Again, I stress that I am merely assuming these facts to be true, not drawing factual conclusions based upon any review of the materials you have supplied me.
In my opinion, if the circumstances were as I have just summarized them, a finder of fact might well conclude that the incident report and records qualified as "employee evaluations or job performance records." Neither the FOIA nor the courts have defined the phrase "employee evaluation or job performance record"; however, this office has consistently taken the general position that records relating to an employee's performance or lack of performance on the job are properly classified as job performance records under the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos. 96-132; 91-324. Formal, written employee evaluations of course qualify. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ops. Att'y Gen. Nos. 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303. It would appear that the records you have requested fall under this designation.
The question of whether these records are exempt if held by someone other than the employer is more difficult. If the facts were as I have summarized and you were seeking records regarding this incident from the sheriff's department, I would opine that the records were in all likelihood exempt.[2] I would base that opinion at least in part on the fact that no sheriff's department employee was terminated or suspended as a result of this incident. However, you are not seeking the documents from the sheriff's department that employed the alleged wrongdoer, but rather from the Department of Corrections, which obtained the documents for its own purposes from the sheriff's department. The relatively narrow question, then, is whether incident records that would be exempt if requested from the law-enforcement employer are likewise exempt if requested from another law-enforcement entity that was itself involved in and investigated the incident.
Although this question is one of first impression in Arkansas, I believe it would be consistent with the spirit of the FOIA to conclude that the requested documents remain exempt under these circumstances. I offer this conclusion well aware both that the FOIA's disclosure requirements must be liberally construed, Laman v. McCord, 245 Ark. 401, 404-05,432 S.W.2d 753 (1968), and that any exemptions to disclosure must be narrowly construed, Bryant v. Mars, 309 Ark. 480, 484, 830 S.W.2d 869
(1992). However, as the Court noted in Bryant, the rule of narrow construction only reflects a "general policy" that "does not preclude an open-minded consideration of the meaning" of any given exemption.309 Ark. at 484. In his treatise on the FOIA, Professor Watkins offers the following on the exemption for evaluations and job performance records:
 The exemption for evaluation records reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interests of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one important objective of the evaluation process — identification of weaknesses with an eye toward fostering improvement — by revealing an employee's deficiencies before he has an opportunity to correct them. The evaluation exemption serves the same purpose as the exemption in Section 25-19-106 of the FOIA that permits a governing body to hold a closed meeting to discuss personnel matters, a provision that dates to the act's passage in 1967.
Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd ed. 1998), at 141-42 (footnotes omitted). The priority on protecting personnel evaluations from disclosure is reflected in the terms of subsection (c)(1) insulating such records unless the employee has been suspended or terminated by final administrative action, and only then if a "compelling public interest" dictates disclosure.
I do not believe a court would remove the restrictions on disclosure of such documents merely because the employer law enforcement agency, for reasons related solely to the performance of official duties, conveyed an incident report to a sister agency likewise investigating the incident at issue. I consider this situation analytically quite close to one my predecessor addressed as follows in the attached Ark. Op. Att'y 92-237:
 You have indicated that in some instances, the Department completes its part of an investigation, e.g., takes witness statements, and forwards the records to another law enforcement agency that is assisting in the investigation, maintaining a copy for Department records. I believe the records in the hands of the Department would, in that instance, in all likelihood continue to fall within the so-called "law enforcement investigation" exemption, as long as they are in fact part of the continuing investigation. This office has stated that the location of documents is not necessarily a determinative factor under the FOIA. See Ops. Att'y Gen. 91-100 [stating general proposition that location not determinative] and 91-323 [tape of executive session, even if attended by unauthorized person and transferred to sheriff's office, remains exempt]. As noted, however, a fact question may arise in this regard.
See also Ark. Ops. Att'y Gen. Nos. 2000-225 ("This office has consistently opined that the location of documents should be irrelevant when considering the application of particular exemptions under the FOIA."); 98-127 (advising against disclosure of city police files transferred to sheriff's office since the subsection (b)(6) exemption for "undisclosed investigations by law enforcement agencies" still applied: "To allow one agency to release records that are exempt from release by another agency would defeat the purpose of the exemption."). Although I appreciate that the present case very likely does not involve an ongoing criminal investigation, as was the case in the cases referenced above, the underlying principle expressed in the quoted passages still applies: the mere location of documents generated by an agency should not bear on the question of whether an exemption applies, be it an ongoing-investigation exemption or an employee evaluation exemption.[3]
In the present case, it appears the Department of Corrections had a legitimate, official reason to be in possession of the sheriff's department's report on the incident that gave rise to your request. In my opinion, given the close relationship between the two agencies with respect to this incident, the job performance records should be equally shielded from disclosure in both agencies.
Although both you and the custodian of records have characterized this dispute as involving only employee evaluations or job performance records, I cannot conclude without reviewing the documents that they might not alternatively qualify as "personnel records," which this office has consistently defined as all records other than employee evaluation/job performance records that pertain to individual employees, former employees or job applicants. See, e.g., Ark. Ops. Att'y Gen. Nos. 200-232, 2000-130, 99-147. If any documents constitute "personnel records," they are subject to disclosure except to the extent that their release would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(10). In the first instance, it is the custodian's obligation to review the documents to determine if this definition applies and if disclosure is warranted.
My analysis would be different with respect to any records that the Department of Corrections itself may have generated regarding this incident. You report that Department of Corrections officials have told you their sole concern in investigating this matter was to determine the extent, if any, of the inmate's misconduct. I assume that records generated in the course of any such investigation would be located in the inmate's records, in which case they might well be exempt from disclosure pursuant to A.C.A. § 12-27-113(e), which protects an inmate's file or "jacket" from inspection except as permitted by court order or administrative regulation. However, assuming the Department of Corrections was not acting as an agent of the sheriff's department in investigating this matter, I do not feel any documents it generated itself could be deemed exempt as personnel records or employee evaluations. Assuming any such documents exist, the custodian must determine whether A.C.A. § 12-27-113 and applicable regulations prohibit their disclosure as public records.
Finally, without reviewing the records, I am unable to opine whether any other exemption, whether set forth at A.C.A. § 25-19-105(b) or elsewhere, might apply to the whole or a part of a record. Even if a document is not exempt from disclosure, the custodian should review its contents to determine whether it contains specific exempt information that should be redacted from the records prior to their release. For example, the custodian has reportedly already redacted certain medical information pursuant to A.C.A. § 25-19-105(b)(2). She should likewise redact any social security numbers contained in produced records. See,e.g., Op. Att'y Gen. No. 99-011, citing 5 U.S.C. § 552a (the "Federal Privacy Act"). Similarly, unlisted telephone numbers are not subject to disclosure. See, e.g., Op. Att'y Gen. No. 99-054. Under certain specialized circumstances where the facts indicate that the employee in question has a heightened privacy interest, the home address and listed telephone number must also be redacted. See Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998); Op. Att'y Gen. No. 99-054. In some instances, an individual's privacy interest rises to a level worthy of constitutional protection. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to documents containing constitutionally protectable information. See McCambridge v. City ofLittle Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. The court further held that if these attributes apply to the matters in question, the question becomes whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the individual's privacy interest in their nondisclosure. Any custodian must consider this potential constitutional issue before disclosing any document.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] I will note in passing that A.C.A. § 12-27-113(e) declares it unlawful to disclose material contained in an inmate's file or "jacket," subject only to a limited right of inspection if authorized by administrative regulation or court order. Furman v. Holloway,312 Ark. 378, 849 S.W.2d 520 (1993).
[2] Indeed, in Ark. Op. Att'y Gen. No. 2000-232, I recently responded to a request from you by opining that the Garland County Sheriff's Office should not produce records of disciplinary actions against its employees that did not result in suspension or termination.
[3] But see Ark. Op. Att'y Gen. No. 93-166 (opining that A.C.A. §25-19-105(b)(7), which exempts "[u]npublished memoranda, working papers, and correspondence of the Governor, members of the General Assembly, Supreme Court Justices, and the Attorney General," did not preclude a newspaper from inspecting a recipient's copy of correspondence from the Governor). As reflected in my predecessor's opinion, the "working papers" exception applies only to the referenced documents in the hands of the listed officials, their staffs and private consultants. See Bryant v.Mars, supra.