Trooper Joe Cornelius c/o Bill Sadler, Public Information Officer Arkansas State Police 1 State Police Plaza Drive Little Rock, AR 72209
Dear Trooper Cornelius:
I am writing in response to your request for my opinion regarding application of the Arkansas Freedom of Information Act ("FOIA"), A.C.A.25-19-101 et seq, as amended by Act 1653 of 2001. You have submitted your request pursuant to A.C.A. 25-19-105(c)(3)(B), which authorizes the custodian, requester, or subject of personnel or evaluation records to seek an opinion from the Attorney General. A law firm that apparently represents three former state troopers has requested that the Arkansas State Police identify "all officers/troopers who have been disciplined within the past three years, the charges or allegations of each and every matter and the final disposition of each and every matter." You object to the release of this information as invading your privacy and have asked me to opine regarding its disclosability.
RESPONSE
Records reflecting job performance are disclosable under the FOIA only if there has been a final administrative resolution of any suspension or termination proceeding, and only then if (a) the administrative resolution upheld a decision to suspend or to terminate and (b) a compelling public interest in disclosure exists. The question of whether a compelling public interest exists is one of fact to be resolved by the custodian upon reviewing the record.
The FOIA generally provides for the disclosure upon request of "public records," which are statutorily defined as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(1), as amended by Act 1653 of 2001. Given that you are a state police officer, and as such a public employee, I believe the information at issue clearly qualifies as a "public record" under this definition.
The statutes relevant to the question of whether this information should be disclosed are A.C.A. §§ 25-19-105(b)(12) and (c)(1), as amended by Act 1653 of 2001, which provide as follows:
 (b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
* * *
 (12) Personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy;
* * *
 (c)(1) Notwithstanding subdivision (b)(12), all employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in disclosure.
If the requested documents constitute "employee evaluation or job performance records," there will consequently be no need to conduct the inquiry applicable to "personnel records" — namely, whether disclosure "would constitute a clearly unwarranted invasion of privacy."
Common sense would suggest that a record reflecting disciplinary charges against a public employee would clearly qualify as a "job performance record." Professor John J. Watkins, a leading commentator on the FOIA, offers the following summation of the law regarding the scope of documents falling under this designation:
 The term "job performance record" has been interpreted by the Attorney General to mean any record that "details the performance or lack of performance" of an employee, within the scope of his employment, regarding "a specific incident or incidents." This definition covers a variety of records, including written reprimands and letters of caution, documents on which a recommendation for dismissal was based, a request for a grievance hearing that contained the employee's rebuttal of the reasons advanced for his termination, letters recommending termination or suspension, records created in connection with investigations into alleged employee misconduct, letters of commendation, records related to promotion or demotion, and records of disciplinary action.
Watkins, The Arkansas Freedom of Information Act (m m Press: 3rd ed., 1998), at 134 (emphasis added; footnotes omitted).
As this passage suggests, this office has consistently interpreted the term "job performance record" in its ordinary-language sense as referring to any document that relates to the quality of an employee's performance in a particular instance. In accordance with this principle, one of my predecessors concluded that letters informing teachers that they had been terminated "relate[d] to the employees' performance or lack of performance," and as such were properly classified as "performance records," notwithstanding the fact that the records reflected the employment decision itself, as opposed to records considered at a termination proceeding. Ark. Op. Att'y Gen. No. 88-097, cited with approval in Ark. Op. Att'y Gen. No. 90-292. See also Ark. Op. Att'y Gen. Nos. 96-258 and 95-109 (after-the-fact memoranda detailing reasons for demotion constitute job performance records). By extension, I believe that any document reflecting the fact of disciplinary charges brought against you, regardless of when the document was created, qualifies as a "job performance record."[1]
The question becomes, then, whether there is a "compelling public interest" in disclosure of the records at issue. The FOIA at no point defines the phrase "compelling public interest." However, Professor Watkins has provided some guidelines for making the factual determination whether such an interest exists. He states, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Watkins, supra
at 146. He further observes: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. Elaborating on this point, Watkins remarks: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 147. Professor Watkins additionally notes that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 146-47 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")[2]
As the previous paragraph suggests, the question of whether a compelling public interest exists is highly fact intensive and case specific. In this as in any other case, the custodian will need to consider the specific circumstances surrounding the disciplinary action taken against you and determine whether these are sufficiently significant to warrant disclosure. However, any disciplinary action short of suspension or termination should remain confidential.
I will note for the record that a different standard will apply if the custodian analyzes the documents as "personnel records." As I noted most recently in Ark. Op. Att'y Gen. No. 2001-152:
 The FOIA does not define the term "personnel records." Whether a particular record constitutes a "personnel record" within the meaning of the FOIA is, of course, a question of fact that can only be determined upon a review of the record itself. However, the Attorney General has consistently taken the position that "personnel records" are all records other than employee evaluation and job performance records that pertain to individual employees, former employees, or job applicants. See, e.g., Op. Att'y Gen. No. 99-147, citing Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd Ed., 1998) at 134.
As reflected in the passage just quoted, if a document is a "personnel record," as opposed to an "employee evaluation or job performance record," it must be released unless its disclosure would constitute a "clearly unwarranted invasion of personal privacy." The fact that the subject of the records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. 2001-152; 2001-112, 94-198, 94-178 and 93-055; Watkins, supra
at 126. In Opinion No. 99-305, my predecessor offered the following analysis of this issue:
 In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy."
Under the balancing test, if the public's interest is substantial, it will usually outweigh any privacy interest. Young v. Rice,308 Ark. at 598. If there is little public interest, it is sufficient if the privacy interest is not insubstantial. Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125
(1998). Only the custodian can conduct this test based on the record before him.
If the custodian decides to release a particular record under one of the above standards, he should further review the particular document to determine whether it contains specific information that is exempt from disclosure under any of various other exemptions. If so, this information should be redacted from the record prior to its release. For example, if the record contains social security numbers, they should be redacted.See, e.g., Op. Att'y Gen. No. 99-011, citing 5 U.S.C. § 522a (the "Federal Privacy Act"). Similarly, unlisted telephone numbers should be redacted. See, e.g., Op. Att'y Gen. No. 99-054. In addition, A.C.A. §25-19-103(a)(13) prohibits the disclosure of the home address of a non-elected state employee — a category into which you clearly fall. More generally, where the facts indicate that a particular individual has a heightened privacy interest — a conclusion that may well apply to police officers — the home address and listed telephone number should be redacted as well. See Stilley, 332 Ark. at 314; Ops. Att'y Gen. Nos.2001-123; 99-054. Some records may further contain references to other employees, in which case the custodian will need to determine whether these references are independently exempt from disclosure as personnel records or employee evaluation/job performance records of the referenced co-workers. Any review of such references should proceed under the applicable tests set forth above.
In addition, records that are otherwise releasable may be withheld from release if they contain information in which an individual has a constitutional privacy interest. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. If the custodian of the records determines factually that any information in the requested records meets the three prongs of the test laid out by theMcCambridge court, he must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs any privacy interest in their nondisclosure. Again, this determination will be a factual one, based upon the information available to the custodian.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Although a literalist might object to this interpretation as an expansion of the statutory text, which references only records considered in a "suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee," A.C.A. §§25-19-105(c)(1), it strikes me as unwarranted and illogical to suggest that records supporting a suspension or termination should be classified differently than records reflecting the fact of the suspension or termination. The Arkansas courts have long held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty,336 Ark. 479, 484, 987 S.W.2d 257(1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 948 S.W.2d 1 (1998); Citizens To Establish A Reform Party v.Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet MortgageCo., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death and Total Permanent Disability Trust Fundv. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
I believe the appropriate approach to this question is that illustrated in Bryant v. Mars, 309 Ark. 480, 830 S.W.2d 869 (1992), in which the Supreme Court ruled that the statute exempting from the FOIA unpublished memoranda, working papers and correspondence of the Attorney General, A.C.A. § 25-19-105(b)(7), extends to his or her staff as well. The court observed:
 We are fully aware of our prior decisions which clearly state that exemptions are to be narrowly construed in favor of openness, Ragland v. Yeargan, 288 Ark. 81, 702 S.W.2d 23 (1986); Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753 (1968), and we reaffirm that general policy. However, we are nevertheless persuaded that the stated policy does not preclude an open-minded consideration of the meaning of the exemption as it applies to the Attorney General of Arkansas.
* * *
 While recognizing our commitment to the general proposition that the FOIA should be broadly construed in favor of disclosure and exceptions construed narrowly in order to counterbalance the self-protective interests of the governmental bureaucracy, McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989), we are also aware of the need for a balancing of interests to give effect to what we perceive to be the intent of the General Assembly. In doing so, a common sense approach must be taken. Simmons First Nat'l Bank v. Liberty Mut. Ins. Co., 282 Ark. 194, 667 S.W.2d 648 (1984).
309 Ark. at 484, 485.
[2] It is my understanding that the law firm has requested this information in the course of representing three individuals who have been terminated from their employment with the Arkansas State Police. Although counsel is doubtless seeking this information purely on behalf of his private clients, I believe the factors discussed in the text should nevertheless apply. Even if a requester has an exclusively private motivation in seeking to publicize information, the appropriate question would appear to be whether there is a compelling public interest in its publication. Cf. Stilley v. McBride, 332 Ark. 206, 214, 965 S.W.2d 125
(1998) (reciting as one factor in support of denying access to police officers' addresses the fact the request was made only to simplify service of process).