Len BLAYLOCK, Chairman, Republican Party of Arkansas
*v.* Carolyn STALEY, Pulaski County Clerk

87-19                                              732 S.W.2d 152

Supreme Court of Arkansas
Opinion delivered July 13, 1987

*Bob Leslie*, for appellant.

*Ivester, Henry, Skinner & Camp*, by: *Orin E. Montgomery*, for appellee.

STEELE HAYS, Justice. The Pulaski County Clerk contracts with Datafacts, Inc., a computer firm, to maintain the voter registration list on computer equipment, referred to as a computer disc or data module. The list is updated periodically and Datafacts supplies copies of the list at the clerk's direction on computer printout or on labels for mailing.

The Chairman of the Republican Party, Mr. Len Blaylock,

requested a copy of the voter registration list on magnetic tape, offering to pay the reasonable charge of reproducing the list. The clerk furnished a printed list (containing about 180,000 names) at a cost of $498, but refused to supply the list on magnetic tape. Relying on the Freedom of Information Act [Ark. Stat. Ann. § 12-2801, et seq., (Repl. 1979)] Blaylock filed suit asking that the clerk be ordered to supply the list as requested. After a hearing the circuit judge found that "Mr. Blaylock seeks a Writ from the Court to issue upon the County Clerk of Pulaski County, Arkansas, for the purpose of mandating the clerk to deliver the disc to Mr. Blaylock's possession and thereby allowing the disc to be cloned, either on a like disc, some other type of computer tape and/or a similar process designed for use in compatible computers[.]" The trial court denied Blaylock's request on the conclusion it was for equipment rather than information.

Blaylock argued in a motion for reconsideration that the court had misinterpreted his request, that he merely wanted the list on magnetic tape rather than on printout which, he maintains, could be done in the office of Datafacts. The trial court's findings remained unchanged and Blaylock renews the argument on appeal.

■ Appellant cites a number of decisions from other states which he believes support the premise that information stored on computer tapes is a public record and the public is entitled to have it in the form in which it is kept. *Minnesota Medical Association v. State*, 274 N.W.2d 84 (Sup. Ct. Minn. 1978); *Martin v. Ellisor*, 213 S.E.2d 732 (Sup. Ct. S.C. 1979); *Menge v. City of Manchester, et al.*, 311 A.2d 116 (Sup. Ct. N.H. 1973). But we need not look beyond the language of our own Freedom of Information Act to find the answer. Given the liberal interpretation our cases have ascribed to the FOIA [*Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968)], the act provides all the guidance necessary. It states that public records include "recorded sounds, films, tapes, or data compilations *in any form*" and that "all public records shall be open to inspection *and copying*." It provides as well that reasonable access to public records and "reasonable comforts and facilities *for the full exercise* of the right to inspect *and copy* such records shall not be denied to any citizen." (Our emphasis throughout.)

28

However, whether the voter registration list can be furnished by Datafacts on magnetic tape is by no means clear. Appellant's abstract contains only a sentence from the testimony of Mr. William M. Helms, president of Datafacts ("I could copy the information onto small diskettes in anywhere from four to six hours and it takes about three hours to produce a printout of the information.") Appellee's supplemental abstract quotes more extensively from the same witness:

> *My company does not have the tape drive or tape capabilities to transfer the information on this disk modular (sic) to generate information onto a magnetic tape.* We work strictly with diskettes and data modulars (sic). It would take approximately 90 to 100 diskettes to hold the information that is on the disk modular (sic.) *We do not have that capacity at Datafacts.* The disk modular (sic) is not a tape, and it is not a data compilation. It is a piece of equipment that is used to make data compilations and a program would tell it what type of data compilations to make. (T. 62). (Emphasis supplied).

At one point in the proceedings the trial judge asked Mr. Blaylock a direct question on this point (R.p. 33):

Q.   But as I understand, you would have to take that tape there, I guess you would call it that, out of the courthouse and somehow use it and then bring it back. Is that what I am to understand? Do you know?

A.   My knowledge is along the line of yours. We were hoping- we're wanting to be able to purchase this at a reasonable price, probably in tape or disk from a copy they have made.

Thus, the testimony on the methods for reproduction is, to say the least, inconclusive. Such discrepancies cannot be resolved at the appellate level- they belong, of necessity, to the trial court.

In sum, we cannot determine from the abstract whether the magnetic copy that appellant wants can be supplied by Datafacts, or whether the magnetic tape can be obtained only by removing the data module from the office of Datafacts to some outside location for copying. If that is the case, as appellee earnestly insists, and as the trial court found, then we agree with the trial

court—the FOIA requires no such measures.

 Because the appellant failed to establish his request was one for information and not equipment, the appeal must be disposed of on the basis of ARCP 52, the findings of the trial court are not shown to be clearly erroneous.

Affirmed.