The Honorable Julia Hughes Jones Auditor of State 230 State Capitol Little Rock, Arkansas 72201
Dear Ms. Jones:
This is in response to your request for an opinion on nine questions involving voter registration. Specifically, the questions concern the registration or cancellation of registration of persons committing felonies, and the amounts to be charged by permanent registrars for copies of voter registration lists. Your questions will be restated below and answered in the order posed.
With regard to your first question, you note that Amendment 51, Section 11(a)(4) requires the permanent registrar to cancel the voter registration of voters "who have been convicted of felonies and have not discharged their sentences or been pardoned." Your first question is whether this language would require cancellation of the voter registration of a person who, when charged with a felony, entered into a plea agreement which resulted in a sentence of only probation for a specified period of time. I have enclosed for your review a copy of Op. Att'y Gen.87-375, previously issued by this office, which addresses the question you have posed. It was concluded therein that the question will depend upon whether a judgment of conviction was entered by the court. I have also enclosed in this regard a copy of Op. Att'y Gen. 91-425, which further discusses this issue.
Your second question is whether the above constitutional provision would apply to a person who, when charged with a felony, entered a plea of "no contest" and was placed on probation for a specified period of time. It is my opinion that the answer to this question is the same as the answer to question one above.
Your third question is whether it would be proper for a permanent registrar to refuse to register a person who, when asked, stated he was a convicted felon. It is my opinion that if the registrar has reason to doubt the qualifications of an applicant for registration, he should submit the application to the County Board of Registration, and the Board must make a determination with respect to such qualifications and instruct the registrar regarding the same. See Amendment 51, Section 9(d).
Your fourth question inquires as to when a convicted felon has "discharged" their sentence. I have enclosed a copy of Op. Att'y Gen. 90-022 which addresses this question.
Your remaining questions involve the fee to be charged by the county clerks for copies of voter registration lists provided to the public. You note that the Arkansas Code (7-5-105 (Cum. Supp. 1993)) entitles the county clerks to two cents per name to be paid from the general fund of the county for the first publication of the list of registered voters in each calendar year. A new act, Act 1092 of 1993, authorizes county clerks to charge an additional fee of one cent per name to be used for funding a computerized state wide voter registration system. You also note that Amendment 51, Section 14, states that the county clerks may distribute voter registration lists "with the approval of the County Board of Registration, at a price necessary to cover the costs of publication." Additionally, you note that the Arkansas Freedom of Information Act (A.C.A. 25-19-101 to -107 ("FOIA")) is generally held to imply that a custodian of a public record may charge a reasonable fee for photocopies and other forms of record reproduction, not to exceed actual costs. Finally, you note that Act 1161 of 1993 stipulates that the county clerks may levy candidates and officeholders a reasonable charge for the list (on computer disk or tape) not to exceed the costs for a written copy of the list.
Your fifth question is whether the county clerks can legally charge more than the one cent per registered name and address mentioned in 7-5-105(b). It is my opinion that the answer to this question is "yes." Amendment 51, Section 14, provides that permanent registrars shall, by the first day of June of each year, print or otherwise duplicate and publish lists of registered voters by precincts. The provision also provides that at their discretion the registrars may at other times distribute voter registration lists free of charge, or with the approval of the County Board of Registration, at a price necessary to cover cost of publication. This provision, in my opinion, clearly allows the registrars to charge a fee necessary to cover the costs of publication, if approved by the Board of Registration. In my opinion, the "additional fee" of one cent set by A.C.A.7-5-105(b) is to be charged in addition to the amount set by the County Board. The fee set by the Board is to cover the costs of publication, and the fee set by 7-5-105(b) is to be deposited into the State Treasury to be used exclusively for funding a statewide computerized voter registration system. This result is also consonant with the FOIA, which allows the charging of a reasonable fee. See Op. Att'y Gen. 87-481.
Your sixth question, which inquires as to what the allowable cost is in such instances, has been answered above in response to question five.
Your seventh question is whether copies of the list on computer disk or tape are only available to candidates and officeholders or whether the general public also can obtain computerized list information. In my opinion, the general public in entitled to access this information, if the request is for information, and not for equipment maintained by the clerk's office. As you note, Act 1161 of 1993 requires county clerks to provide computer disks or tapes of voter registration lists to candidates for elective office and holders of elective office. The act authorizes a fee not to exceed the fee charged for a written list. In my opinion, however, the general public is also entitled to this information under the FOIA, if it can be proven that the request is one for information, and not computer equipment. This was the holding of Blaylock v. Staley, 293 Ark. 26, 732 S.W.2d 152 (1987).
Your eighth question is whether the list of registered voters is considered to be a public record and, as such, subject to inspection under the Freedom of Information Act. It is my opinion that the answer to this question is "yes." See Blaylock, supra.
Your final question is (assuming that the answer to question 8 is "yes"): which provision of law governs the costs of copies, the provisions of 7-5-105(b) and Amendment 51, Sec. 14, or the common practice under the Arkansas Freedom of Information Act? It is my opinion, as stated above, that both the reasonable costs of publication under Amendment 51 (which is an amount similar to that chargeable under the FOIA) and the one cent fee authorized at A.C.A. 7-5-105(b) may be charged.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh